#24614-r-JKK

**2008 SD 66**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,  Plaintiff and Appellee,

  v.

WYATT MORSE, a/k/a
ROY FRALEY,  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RANDALL L. MACY
Judge

* * * *

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
Assistant Attorney General
Pierre, South Dakota  Attorneys for plaintiff
 and appellee.


ERIC D. WHITCHER
Lawrence County Public
 Defender's Office
Deadwood, South Dakota  Attorneys for defendant
 and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 21, 2008

OPINION FILED **07/16/08**

#24614

KONENKAMP, Justice

[¶1.]　　　　Wyatt Morse agreed to convert Janice Heffron's second-floor room into a small bathroom.  He said his plumbing work would be above and beyond code and that he could complete the project in five weeks for $5,000.  After ten weeks, the project was not finished.  Morse quit without explanation.  He had been paid in excess of $6,000.  Afterwards, Janice learned that some of the work he did was faulty.  Morse was charged and convicted of theft by deception.  On appeal, we reverse because there was insufficient evidence from which a jury could infer that Morse had the intent to defraud.

## Background

[¶2.]　　　　Janice Heffron purchased a home in Deadwood, South Dakota.  It was listed on the historical registry and was originally her grandfather's.  She planned on remodeling and restoring the structure.  In the fall of 2005, Janice hired Ricardo Trevino to work on the exterior.  Janice also wanted a room on the second floor converted into a small bathroom.  Trevino indicated that he could likely complete the project for between $7,000 and $10,000, but he did not provide a formal bid.

[¶3.]　　　　Wyatt Morse was Janice's neighbor and had come to her house while Trevino was working.  Through discussions with Janice, Morse learned about her desire to have a second-floor bathroom.  He proposed to convert the second-floor bedroom into a bathroom in five weeks for $5,000.  According to Janice, Morse "stalked" her about doing the remodeling project, repeatedly stating he could do it "easy, quick, cheap."  Nonetheless, Janice told her mother, Maxine Heffron, who would finance the project, about Morse's offer.  Maxine and Janice then went to

Morse's home, where he showed them the bathroom he had restored. Janice and Maxine were impressed. Morse also told them that he had plumbing experience, that his work would be above and beyond code, and that the local inspector did not inspect his work because he was so good.

[¶4.]        In December 2005, Janice, Maxine, and Morse made an oral agreement for him to complete the project in five weeks for $5,000, with payments in cash installments. Maxine wanted to pay using personal checks to assure a paper trail, but Morse convinced her to pay him with cash. According to Janice, he wanted to be paid in cash to avoid the IRS. They agreed that Morse would convert the room into a bathroom, install an antique claw-foot tub (one that he would provide personally), put wainscoting on the walls, install an old tin ceiling like the one in his bathroom, and install crown molding.

[¶5.]        Morse began work in January 2006. His efforts continued until the second week of March. He repaired the kitchen ceiling and wall. He installed plumbing fixtures in the area he repaired. He removed the old water heater and installed a new one. He ran a freeze-proof spigot outside the house. He put in a bathroom vent with an antique vent cover. He custom built a bathroom cabinet at no extra cost to the Heffrons. He mounted wainscoting and crafted a surrounding shelf with rope lighting. He put in a faux tin ceiling, with crown molding and trim. He installed water pipes and a new drain stack.

[¶6.]        The project took longer and cost more than originally agreed. Morse ran into difficulties when he attempted to install a tankless water heater that Maxine was aware took approximately two weeks effort. He was never able to

install the tankless heater, and ended up installing a traditional tanked water heater. Morse also experienced problems with some of the pipes he installed. Janice told him that they were leaking. He repaired them and blamed the leaks on bad batches of solder.

[¶7.] Maxine paid Morse somewhere between $6,000 and $6,500 cash. Her last payment was on February 28, 2006. Some of the cash, she said, was for "off contract" materials that were not part of the contract price. In March 2006, Morse fell and aggravated his already bad back. Before Janice and Maxine hired him, Morse had told them that he had a back condition. After his fall in March, he came to the job site less and less. Then, after the second week in March he stopped coming entirely. The Heffrons tried contacting him through phone calls, personal visits, and certified mail. He never responded.

[¶8.] After Morse abandoned the project, Janice contacted a licensed plumber, who examined Morse's work and gave Janice an estimate on the cost of completing the project. The plumber pointed out several deficiencies in Morse's work. In particular, Morse incorrectly installed the water heater, the pipes for the sink, lavatory, and bathtub. He used S-traps, illegal in South Dakota, and improperly vented the floor drains. Because he installed the water heater incorrectly, carbon monoxide was leaking into Janice's home. In sum, Morse's work on the bathroom, in the opinion of the licensed plumber, had no value to the home.

[¶9.] On October 12, 2006, Morse was indicted for grand theft by deception in violation of SDCL 22-30A-3(1) and SDCL 22-30A-3(3), or in the alternative, grand theft by obtaining property without paying. The alternative count was later

dismissed. A Lawrence County jury returned a guilty verdict. Morse admitted to a Part II Information and was sentenced to five years in prison. He appeals asserting that the evidence was insufficient to sustain the verdict.

### Standard of Review

[¶10.] Our de novo standard of review on a sufficiency claim is well established:

> "*[A]ll* of the evidence is to be considered in the light most favorable to the prosecution." Jackson v. Virginia, 443 US 307, 319, 99 SCt 2781, 2789, 61 LEd2d 560 (1979) (emphasis in original). There must be substantial evidence to support the conviction. Glasser v. United States, 315 US 60, 80, 62 SCt 457, 469, 86 LEd 680 (1942), *superseded on other grounds*, Bourjaily v. United States, 483 US 171, 107 SCt 2775, 97 LEd2d 144 (1987). The "inquiry does not require [an appellate] court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 US at 318-19, 99 SCt at 2789, 61 LEd2d 560 (emphasis in original) (quoting Woodby v. Immigration and Naturalization Serv., 385 US 276, 282, 87 SCt 483, 486, 17 LEd2d 362 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. Evidence is insufficient, and therefore not substantial, when no rational trier of fact could find guilt beyond a reasonable doubt. *Id*.

State v. Tofani, 2006 SD 63, ¶37, 719 NW2d 391, 401.

### Analysis and Decision

[¶11.] Morse argues that the State failed to prove he had the requisite intent to defraud the Heffrons. He does not dispute that the work he did on Janice's home was faulty and resulted in the Heffrons having to pay considerably more in repairs. Nonetheless, he claims that his faulty work created a classic breach of contract claim, because when he entered into the agreement to remodel the bathroom, he

believed he was capable of doing quality work and fully intended on completing the project. The State, on the other hand, argues that Morse "created and reinforced the false impression in the minds of Jan and Maxine Heffron that he was licensed to, and capable of, installing a second floor bathroom." More particularly, the State contends that Morse "deceived" the Heffrons on his ability to do the work, "misled" them with his statements that his work would be above code, and "took actions to further reinforce the false impression that he was able to properly install the bathroom."[1]

[¶12.]    Theft by deception is a specific intent crime. State v. Heftel, 513 NW2d 397, 400 (SD 1994) (citing State v. Klein, 444 NW2d 16, 19 (SD 1989)). Intent to defraud "'means to act willfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self.'" Id. (quoting State v. DeWall, 343 NW2d 790, 792 (SD 1984)). Therefore, Morse must have had the "purpose to deceive." See State v. Hurst, 507 NW2d 918, 920 (SD 1993). "'It is only where [actors do] not believe what [they] purposely caused [their victims] to believe, and

---

1.    The State also asserts that because Morse was *legally* required to have a plumbing license and building permit, but had neither, "he deceived the Heffrons as to matters of law," in violation of SDCL 22-30A-3(1). The State cannot make this claim on appeal. At trial, the State never argued that Morse deceived the Heffrons as to matters of law. Moreover, the jury was not instructed that it could consider whether Morse created a false impression as to law. Despite appellate counsel's belief that the facts support an additional theory of guilt, this Court has long held that it will not consider issues for the first time on appeal. See Schull Constr. Co. v. Koenig, 80 SD 224, 229, 121 NW2d 559, 561 (1963).

where this can be proved beyond a reasonable doubt, that [these actors] can be convicted of theft.'" *Id.* (quoting Model Penal Code § 223.3 cmt 3(b)).

[¶13.]     In *State v. Fyffe*, the Ohio Court of Appeals ruled there was insufficient evidence to convict the defendant for *knowingly* depriving the victim of property, i.e., money, by deception, despite the fact that the defendant took money and did not perform. 588 NE2d 137, 141 (OhioCtApp 1990). Fyffe agreed to do numerous home repairs for Dollie Traugotthad. *Id.* at 139. After he completed the first set of repairs, he and Dollie talked about some additional work, and he agreed to resurface and install a turn-around in the driveway. After Fyffe did some of the work, he left and never returned. Fyffe was indicted for grand theft for obtaining over $6,000 from Dollie by deception. At trial it was alleged that Fyffe overcharged for his work, failed to complete some of the promised work, and, according to expert testimony, performed below acceptable standards. *Id.* at 141. The trial court found him guilty of theft by deception. In reversing the conviction, the court ruled that "[s]imply because [Fyffe] charged more for his work than someone else might have, and simply because [he] did not complete the work in accordance with [the expert's] standards does not prove that [Fyffe] knowingly deprived [Dollie] of services or her money by deceiving her." *Id.* at 141-42. Moreover, the court concluded that "[t]here is no evidence that [Fyffe] deceived [Dollie] by misrepresenting to her that he was giving her a 'deal' on the price he charged for his work, that he never intended to do the work, or that he would do the work in a specific manner and then did it in some other way." *Id.* at 142. If anything, the court concluded, the matter was a breach of contract case. *Id.*

[¶14.]     An Alabama court also reversed a defendant's conviction of theft by deception. *Smith v. State*, 665 So2d 1002 (AlaCtApp 1995). The court held that the evidence was insufficient to show that the defendant intended to deprive the victim when the victim gave him money in return for his promise to screen print seventy-two shirts. *Id.* at 1004. Although the project was never completed and the defendant spent the money on personal needs, the court stated that the defendant intended to perform at the time he obtained the money. *Id.* at 1003. If the defendant had had a history of this type of conduct, the court would have upheld his conviction. *Id.* at 1003 (citing *Baker v. State*, 588 So2d 945, 947 (AlaCtApp 1991)). Further, the court noted that "[a]n affirmance under the facts presented in this case would only serve to cast prosecutors in the role of judgment collectors and encourage potential civil litigants to seek a remedy in a criminal court in the form of restitution." *Id.* at 1004.

[¶15.]     There are a number of cases involving construction contracts where courts have found the evidence sufficient to prove deceptive theft, or related criminal conduct. In those cases, however, there was either circumstantial or direct evidence to establish the requisite intent. For example, in *Cash v. United States*, an appeals court held that the jury could infer intent when *at the time* Cash obtained the money he had no intention to complete the work because he took the money and *never* performed. 700 A2d 1208, 1211-12 (DCCtApp 1997). In *State v. Rivers*, the Iowa Supreme Court upheld the defendant's conviction for theft by deception because he had a pattern of deceptive conduct. 588 NW2d 408, 410-11 (Iowa 1998). Rivers was a self-employed contractor, who obtained multiple remodeling jobs, took

money as a down payment, persuaded his customers to give him more money, and then never completed the work. According to the court, "[t]he evidence suggests that when Rivers had milked the customer for as much as appeared possible, he never showed up again." *Id.* at 412. In *Craver v. State*, the Wyoming Supreme Court disagreed that Craver's failure to perform was merely a civil matter. 942 P2d 1110, 1114-15 (Wyo 1997). According to the court, "Craver's actions were more than mere nonperformance" because he *knew* he could not perform the work and took the money after deceiving his victims that he could. *Id.* at 1114.

[¶16.] Here, Morse was convicted of theft by deception, defined in SDCL 22-30A-3. It states in part:

> [a]ny person who obtains property of another by deception is guilty of theft. A person deceives if, with *intent to defraud*, that person:
>
> (1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind. However, as to a person's intention to perform a promise, deception may not be inferred from the fact alone that that person did not subsequently perform the promise; . . .
>
> (3) Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom the deceiver stands in a fiduciary or confidential relationship; . . .
>
> The term, deceive, does not, however, include falsity as to matters having no pecuniary significance or puffing by statements unlikely to deceive reasonable persons.

*Id.* (emphasis added). In *Hurst,* we noted that SDCL 22-30A-3 is similar to section 223.3 of the Model Penal code, requiring that the accused have a purpose to deceive. 507 NW2d at 920. The accused must act willfully and with the specific intent to defraud. *Heftel,* 513 NW2d at 400.

[¶17.]     Based on our review of the record, in a light most favorable to the verdict, Morse: (1) failed to complete the project in five weeks for $5,000 as promised; (2) performed work that was not "above and beyond code" as promised; (3) lied about obtaining a building permit; (4) lied about the reasons he could not get the tankless water heater installed and why the pipes were leaking; (5) returned the water heater and did not give the $186 refund to Maxine;[2] (6) never provided Janice or Maxine receipts for materials purchased; (7) quit working on the project prematurely and without explanation; and (8) never responded to the Heffrons' attempts to contact him.[3]

[¶18.]     These facts do not prove the elements of theft by deception. There is no evidence that Morse had a purpose to deceive or intended to defraud the Heffrons when he agreed to remodel Janice's bathroom. Although his work was not above and beyond code, the State never argued that Morse *knew* he would do faulty

---

2.     Apparently relying on the State's appellate brief, the dissent claims that Morse purchased products at Menards on Maxine's credit card without her permission. Nothing in the record supports this. At trial, Janice was asked, "And how were these [materials] being purchased at Menards?" She responded, "Either my mother would write a check or use her credit card." Maxine testified that she, Morse, and Janice "went out to Menards and we would make purchase of what he needed, and we used the credit card." Maxine did testify about the $186 refund from returning the tankless water heater, but neither Maxine nor Janice claimed that Morse purchased materials with their credit cards without their permission.

3.     According to the State, Morse also created the false impression that he was a licensed plumber. The testimony does not support this claim. Janice testified that Morse only told her he was in the process of getting his license. Therefore, Janice was aware when she hired Morse that he was not a licensed plumber.

work.[4]  Janice and Maxine both testified that Morse took them up to his house and showed him the remodeling that he did to his own bathroom.  They both said they were impressed.  It cannot be inferred that Morse intended to defraud the Heffrons because his work product was not up to code.  *See Fyffe*, 588 NE2d at 141-42 (substandard work does not result in inference of intent to defraud).

[¶19.]      Moreover, the State never argued or presented evidence that Morse took Maxine's money with the intention of never performing under their agreement. *See Smith*, 665 So2d at 1003 (taking money and not performing without a previous history of that pattern of conduct is insufficient to establish intent); *Rivers,* 588 NW2d at 410 (pattern of deceptive conduct can lead to inference of intent to defraud); *but see Cash*, 700 A2d at 1211-12 (intent to defraud could be inferred). The parties made their agreement in December 2005, and no one disputes that Morse worked regularly on the project from January 2006 until the second week of March.  While Morse failed to complete the project in five weeks for $5,000 as

---

4.      The dissent contends that Morse made false statements on the *value* of his services, which "brought his statements within the scope of SDCL 22-30A-3." *See* dissent, *infra* ¶35.  Morse, however, was not charged with defrauding the Heffrons as to "value," but rather as to "intention."  In *State v. Quinn*, we reversed a conviction for theft by deception when we concluded that the evidence did not support the conviction as *charged.*  2001 SD 25, ¶25, 623 NW2d 36, 40.  Although SDCL 22-30A-3 provides several ways theft by deception can be established, the evidence must support the crime as charged.  "The prosecutor in this case [Quinn] focused exclusively on theft by deception perpetrated by misrepresenting the law" and the "count did not allege additional instances, based on either fact or statute, in which theft by deception could be proven." *Id.*  Likewise, here the State alleged that Morse deceived the Heffrons as to *intention* and the jury was instructed only on deception as to *intention.*  Therefore, like *Quinn*, we cannot consider whether the facts would support an alternative conviction under an additional theory as the dissent would propose.

promised, the State never claimed that he *knew* it would take longer and charge more, and tricked the Heffrons into believing him. Neither Janice nor Maxine claimed that Morse deceived them into paying him more money when the project took longer than anticipated. *See Rivers*, 588 NW2d at 411-12. Rather, Maxine testified that "[h]aving had construction done before, I knew it was going to run more money than you really anticipate. . . . So I figured right up front when he said $5000, five weeks, I thought, oh this is going to run me probably $7000, $8000 to get that bathroom done. And I think that's why, when he needed more money, I didn't hesitate."

[¶20.]     Morse did keep a $186 refund after returning the tankless water heater, which was rightly Maxine's money, but this fact alone does not prove that Morse intended to defraud the Heffrons when he agreed to do the project. Morse also lied to Janice and Trevino in saying that he had obtained a building permit. Janice and Trevino testified, however, that the conversation took place in March, and because the last payment Morse received from Maxine was February 28, 2006, the false representation about the building permit could not have deceived the Heffrons into parting with more money.

[¶21.]     The facts of this case are analogous to *Fyffe*, 588 NE2d at 141, and *Smith*, 665 So2d at 1003-04, where each court held that there was insufficient evidence to sustain the conviction because no evidence established that the defendant possessed the requisite intent. Similarly, in this Court's past cases, there was either direct evidence of the defendant's intent to defraud or the court identified specific circumstantial evidence establishing that *at the time the property*

*was obtained* the defendant acted with the requisite intent. *See* State v. Phair, 2004 SD 88, 684 NW2d 660 (defendant *knew* her representations were false *when* she made them to obtain loans); *Heftel,* 513 NW2d at 400-401 (circumstantial evidence established defendant *knew* the bank overpaid him *when* he took the money); *Hurst,* 507 NW2d at 921-22 (evidence existed that defendants *knew* they were not going to burn the waste *when* they purposely made their victims believe they would); *Klein,* 444 NW2d at 19 (defendant had two prior convictions for theft by deception that were relevant to establish motive and intent in the principal crime). Mere nonperformance does not equal intent to defraud.

[¶22.]     To sustain a conviction, each element of an offense must be supported by evidence. *See* State v. Plenty Horse, 2007 SD 114, ¶¶8-9, 741 NW2d 763, 766. Theft by deception is a specific intent crime, and therefore, the State was required to prove beyond a reasonable doubt that Morse had the specific intent to defraud the Heffrons when he agreed to remodel the bathroom. Here the evidence offered by the State "is so insubstantial and insufficient, and of such slight probative value, that it is not proper to make a finding beyond a reasonable doubt that [Morse] committed all of the acts constituting the elements of the offense[.]" *See Fyffe,* 588 NE2d at 141.

[¶23.]     Reversed.

[¶24.]     SABERS and MEIERHENRY, Justices, concur.

[¶25.]     ZINTER, Justice, concurs with a writing.

[¶26.]     GILBERTSON, Chief Justice, dissents.

#24614

ZINTER, Justice (concurring).

[¶27.] As the Court notes, the *sole* legal theory upon which this matter was submitted to the jury was that*, at the time the contract was made*, Morse made fraudulent representations to *induce* Heffrons to enter into the contract. On that issue, the record reflects that the trial did not involve disputes of credibility or conflicting evidence. Morse did not testify, and the parties simply argued whether Morse's unrefuted representations and substandard work established fraudulent intent in making the contract. Thus, the issue was whether the essentially undisputed historical facts met the legal elements of fraud in the inducement under SDCL 22-30A-3(1) and 22-30A-3(3).

[¶28.] Although most of the trial involved circumstantial evidence — evidence upon which the dissent relies — I am persuaded to join the opinion of the Court because virtually all of that evidence related to *post*-inducement conduct and evidence of Morse's substandard work *that was actually performed*. Furthermore, that evidence established nothing other than Morse's incompetence, financial disputes, medical problems relating to his ability to finish the contract, and puffing. Similarly, the only direct evidence of pre-inducement representations, provided in Heffrons' testimony, also reflected nothing more than puffing. At trial, Maxine Heffron described the nature of the deception as: "I had no indication, you know, that he wasn't *able* to *follow through*." (Emphasis added). Janice Heffron's testimony was similar. After discussing Morse's plumbing and other representations, she was asked what Morse's statements meant to her. She responded that she "interpret[ed]" the statements to mean "that he would do a

fabulous job." When asked if there were any other representations that Morse made to induce her to enter into the contract, she indicated, "not that I can recollect."

[¶29.] Upon a review of all trial testimony, I agree with the Court that even viewing the evidence most favorably to support the verdict, the evidence did not, as a matter of law, support a rational theory of fraud in the inducement of the contract. There were no material disputes of fact or issues of credibility. The evidence reflected nothing more than a civil dispute involving a contractor who was, for a variety of reasons, unable to competently perform. Morse's motion for judgment of acquittal should have been granted.


GILBERTSON, Chief Justice (dissenting).

[¶30.] I respectfully dissent. Twelve jurors were charged with determining whether Morse was guilty of grand theft by deception in violation of SDCL 22-30A-3(1) and SDCL 22-30A-3(3). They concluded that this was not a mere civil dispute between an over-expectant home owner and an under-achieving contractor. They concluded it was a crime. In so doing, they found that Morse had the specific intent to defraud.

[¶31.] This Court does not retry cases de novo. Instead, we review the evidence in the light most favorable to the jury's verdict. State v. Tofani, 2006 SD 63, ¶35, 719 NW2d 391, 400. In a similar theft by deception case, we set forth our standard of review:

> This case turns on this factual determination. "Where
> conflicting evidence is present, as in this case, and the
> credibility of witnesses is in issue, then it is a question of
> fact for the jury. The jury is physically present at the

> trial and, therefore, in the best position to judge the demeanor and credibility of the witnesses." State v. Shank, 88 SD 645, 226 NW2d 384, 387 (1975).

State v. Hurst, 507 NW2d 918, 921 (SD 1993). This standard of review is vitally important in a theft by deception case, because rarely, if ever, will a defendant get on the stand and announce that he or she had the specific intent to defraud. "'The proof of fraudulent intent need not be direct; it may be inferred from expressly proven acts of the accused and surrounding circumstances.'" People ex rel. BJT, 2005 SD 123, ¶10, 707 NW2d 489, 492 (quoting State v. Teutsch, 80 SD 462, 466, 126 NW2d 112, 115 (1964)). Thus, it falls upon the jury to judge the credibility of the State's evidence and witnesses and any brought forth by the defendant.

[¶32.] If Morse had just extolled the general virtues of his abilities as a plumber this could be excused as advertising or puffing. He, however, did far more. He made specific factual representations to induce the Heffrons to hire him. He told the Heffrons that his work would be above and beyond code. While there is a lot of gray in claiming to be a "good" plumber, or even some in repeatedly telling the victim the job will be "easy, quick, cheap," the same cannot be said for a claim that the work will be above and beyond code. It is either above and beyond code or it is not. The accuracy of such a claim can be empirically determined by reference to the plumbing code. Here it is undisputed that Morse's work did not meet code, and this Court concedes it "had no value to the home."[5]

---

5. In his brief Morse admits "[t]here is no dispute that some of the plumbing did not meet the rigors of the plumbing code." Those "rigors" identified by State Plumbing Inspector Gerald Johnson included no plumbing certificate,

(continued . . .)

[¶33.] To also "close the deal" Morse further assured the Heffrons that his work was so good that the local plumbing inspector did not inspect his work. Once again, this is not puffing. Whether the local plumbing inspector passed his work without inspection because of Morse's self-proclaimed expertise is easily ascertainable. This was obviously another misstatement of fact Morse made in order to get the job. In his brief Morse does not even attempt to claim this statement was truthful.

[¶34.] Moreover, there was no negotiation between equals. Like many homeowners, Heffrons had minimal knowledge in the plumbing field. Specifically, the Heffrons did not feel they possessed sufficient knowledge about plumbing to question Morse's self-professed plumbing skills.

[¶35.] The statements were made by Morse to "create . . . a false impression . . . including false impressions as to . . . [the] value" of his services. SDCL 22-30A-3(1). Thus, he was not convicted for doing substandard work or not completing the job. Rather, his statements brought him within the scope of SDCL 22-30A-3. He created false impressions to get the job. The fact he received between $6,000 and $6,500 for his "services" makes it a matter of "pecuniary significance" required by SDCL 22-30A-3.[6]

_____

(. . . continued)
improper bathroom venting, no water heater expansion tank, and, no relief valve on the water heater.

6. Lest there be any confusion as to whether the Heffrons received anything of value for their investment, one expert witness testified that Morse's "plumbing" did not have any value and another testified that Morse's "work" actually constituted a detriment to the value of the home.

[¶36.]   Morse's "acts . . . and surrounding circumstances" when he got an agreement from the Heffrons, are relevant to a determination of the issue of fraudulent intent.  *BLT,* 2005 SD 123 at ¶10, 707 NW2d at 492.  While the following acts do not directly constitute a fraudulent inducement or occurred too late in the relationship to be a fraud to induce Heffrons into hiring him, they strongly bolster the jury's conclusion that Morse's original statements were made with fraudulent intent.  They include:

    (1)    Janice Heffron did not seek Morse out to do the job. He repeatedly hounded her about getting the job to the point she described it as "almost being stalked."

    (2)    He demanded to be paid in cash to defraud the Internal Revenue Service;

    (3)    He refused to sign a written contract and only wanted an oral agreement;

    (4)    He lied about obtaining a building permit;

    (5)    He purchased items at Menards on the Heffrons' credit card without their permission;

    (6)    He failed to produce receipts for his project purchases despite the repeated requests of the Heffrons to do so;

    (7)    He lied about the reasons he could not get the tankless water heater installed and why the pipes were leaking;

    (8)    He returned the water heater to Menards and did not give the $186 refund to the Heffrons;

    (9)    He quit working on the project prematurely and without notice or explanation; and,

    (10)    He never responded to the Heffrons' attempts to contact him after he failed to return to work.

[¶37.] We need not depart this jurisdiction as does the Court, for interpretative case law concerning the State's burden of proof to establish a specific intent to defraud to secure a conviction under SDCL 22-30A-3. In State v. Klein, 444 NW2d 16, 19 (SD 1989) we upheld the conviction of a defendant who overstated the value of his personal property to obtain payment upon an insurance policy. What difference is there between fraudulently obtaining money by one saying he owns destroyed property which he does not, or by saying he is such a good plumber that his work is above code and does not need inspection?

[¶38.] The same defense Morse raises was rejected by this Court in *Hurst*, 507 NW2d 918. There the defendants contracted to incinerate medical waste. Instead, they simply buried it. Their defense was their actions did not constitute fraud by deception, but were merely a breach of contract. We interpreted SDCL 22-30A-3 to require, "[i]t is only where the actor did not believe what he purposely caused his victim to believe, and where this can be proved beyond a reasonable doubt, that the actor can be convicted of theft." *Hurst*, 507 NW2d at 920 (quoting Model Penal Code § 223.3 cmt.3(b)). Did Morse truly believe that his plumbing work was above code and was so good that the plumbing inspector did not bother to inspect it? The jury had a significant amount of evidence to conclude he did not. In upholding the jury's verdict in *Hurst,* we concluded, "[c]learly, this failure to incinerate the waste was more than breach of contract. Defendants had the purpose to deceive." *Id*. at 921. We also concluded that "'[i]t is a false pretense where a man represents himself to be in a situation or business in which he is not.'" *Id*. (quoting Kansas v. Handke, 185 Kan 38, 340 P2d 877, 883 (1959)).

[¶39.]        In State v Phair, 2004 SD 88, 684 NW2d 660, Phair was convicted of theft by deception for failing to tell a lender that the title to her auto had an unregistered lien upon it, thus allowing her to get a loan on the vehicle. Phair challenged the sufficiency of the evidence by arguing that she had no specific intent to defraud in the loan transaction. She claimed that she truthfully answered all questions put to her by the lender and it was not her fault that the lender failed to ascertain that an unrecorded lien existed. We affirmed holding that there was sufficient evidence for the jury to conclude she intentionally misrepresented the lien status of the vehicle. If failing to inform a party "I have a lien on my car" is felony deception, so, too, is telling a party "my plumbing is above code and so good the plumbing inspector does not even inspect it."

[¶40.]        Most recently in State v. Swalve, 2005 SD 17, 692 NW2d 794 the defendant was charged with selling cars without disclosing to the purchaser they had liens against them and charging customers for extended warranties which he did not provide. He claimed he was entitled to an acquittal because there was insufficient proof to establish he possessed the specific intent to defraud. Specifically Swalve tried to blame the acts upon his sales staff. Here, Morse worked alone and had no one but himself to blame his acts upon. In *Swalve* we affirmed after applying the appropriate standard of review that a jury's verdict will not be set aside "if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *Swalve*, 2005 SD 17 at ¶5, 692 NW2d at 797.

[¶41.] Thus, this Court should review the requirements of SDCL 22-30A-3(1) and 22-30A-3(3) by applying our own interpretative case law. Moreover, such specific affirmative misrepresentations to obtain a financial benefit are conspicuously missing from the out-of-jurisdiction cases cited by this Court upon which it relies in reversing Morse's criminal conviction.[7]

[¶42.] When researching this Court's opinions concerning the sufficiency of the evidence for convictions pursuant to SDCL 22-30A-3 there is a consistent deference to the determination of the jury because determinations of fraudulent intent are, by their nature, "factual," *Hurst,* 507 NW2d at 921, and "circumstantial." *BJT,* 2005 SD 123 at ¶10, 707 NW2d at 492. That deference has, until today, been given in similar factual determinations.[8]

[¶43.] This case also involves a factual and circumstantial determination. This Court fails to adequately articulate why the deference of all the previous cases

---

7. In State v. Fyffe, 588 NE2d 137, 142 (Ohio CtApp 1990) the defendant only told the property owners he would give them a "deal." In Klink v. Commonwealth, 407 SE2d 5, 8 (VaCtApp 1991) "[t]here was no evidence of any false statements made to induce the homeowner to enter into the contract." In State v. Tovar, 580 NW2d 768 (Iowa 1998) the court concluded there was no evidence defendant told homeowners he would use their down payments to purchase carpeting. In Smith v. State, 665 So2d 1002 (AlaCtApp 1995) the defendant promised to produce t-shirts and failed to do so.

8. State v. Quinn, 2001 SD 25, 623 NW2d 36, was a trial to the court based upon stipulated facts.

does not apply here and why it is taking a new appellate direction.[9] An examination of its opinion shows that it gives the defendant the benefit of the factual doubt rather than applying our accepted standard of review which states that all of the evidence is supposed to be considered in the light most favorable to the jury's verdict. *Tofani*, 2006 SD 63 at ¶35, 719 NW2d at 400.

[¶44.]     For these reasons, I respectfully dissent.

---

9.     Nor were our decisions controversial. *Klein, Hurst, Phair and Swalve* are without dissent.