GILBERTSON, Chief Justice
(dissenting).
[¶29.] I respectfully dissent for the reasons stated in State v. Morse, 2008 SD 66, ¶¶ 30-44, 753 N.W.2d 915, 923-27 (Gilbertson, C.J., dissenting).
This Court does not retry cases de novo. Instead, we review the evidence in the light most favorable to the jury’s verdict. In a similar theft by deception case, we set forth our standard of review ... Where conflicting evidence is present, as in this case, and the credibility of witnesses is in issue, then it is a question of fact for the jury. The jury is physically present at the trial and, therefore, in the best position to judge the demean- or and credibility of the witnesses. This standard of review is vitally important in a theft by deception case, because rarely, if ever, will a defendant get on the stand and announce that he or she had the specific intent to defraud. “The •proof of fraudulent intent need not be direct; it may be inferred from expressly proven acts of the accused and surrounding circumstances.” People ex rel. BJT, 2005 SD 123, ¶ 10, 707 N.W.2d 489, 492 (quoting State v. Teutsch, 80 S.D. 462, 466, 126 N.W.2d 112, 115 (1964)).
Id., 2008 SD 66, ¶ 31, 753 N.W.2d at 923-24 (citations omitted) (emphasis added).
[¶ 30.] The majority opinion eschews the jury’s ability to consider the demeanor and credibility of the witnesses and to draw conclusions from the evidence based *549 on these factors. The majority opinion does not draw favorable inferences from the evidence in support of the jury’s conclusion regarding these circumstances, as required by our standard of review. See supra ¶ 15. Instead, it replaces the jury’s physical presence in the courtroom with its own reevaluation of the evidence from a cold reading of the record. See supra ¶¶ 22-24. While reconsidering the evidence, the majority opinion is particularly deferential to Jackson’s position, especially on the “profit” and “intent” issues. See supra ¶23 (“Jackson also testified that $5,000 of the down payment was profit.” Jackson’s credibility is the province of the jury and the “profit” was not actual profit, as discussed below.); ¶ 24 (“All of the other evidence indicates that Jackson had the intention to complete the job.”) The majority opinion supplants the jury’s conclusions regarding intent and witness credibility with its own.
[¶ 31.] The evidence indicates that Jackson took his “profit” out of Epperson’s proceeds before performing the work.
profit, n. 1. The excess of revenues over expenditures in a business transaction;
gross profit. Total sales revenue less the cost of the goods sold, no adjustment being made for additional expenses and taxes.
net profit. Total sales revenue less the cost of the goods sold and all additional expenses. paper profit. A profit that is anticipated but not yet realized.
unrealized profit. See paper profit.
Black’s Law Dictionary (8th ed.2004), profit. Jackson incorrectly estimated the “profit” to be received from this project. After he had withdrawn $5,000 of Epper-son’s down payment, Four Seasons had insufficient funds available to pay the expenditures or costs of the project. Even though he considered the $5,000 to be “his,” Jackson and Four Seasons had not yet realized the profit. Jackson did not return this unrealized profit to the business in order to make up for the deficiency. Since that time, he has maintained his personal right to these “profits.”
[¶ 32.] The jury heard evidence that Jackson requested a 70% down payment, and that the 50% Epperson eventually put down was, according to his belief, to go toward the purchase of materials. In the twenty days between the deposit of Epper-son’s money in Four Season’s bank account and the $5,000 “profit” withdrawal for his personal use, no other deposits were made into the account. Considering all of the surrounding circumstances, the jury could have reasonably concluded that Jackson specifically intended, at the time the contract was made, to get as much money as possible from the victim and then withdraw the money for his personal use, with no intent to fully perform.
[¶ 33.] The jury’s finding is not unsupported simply because the circumstantial evidence of Jackson’s initial intent was only ascertainable from events and conduct that occurred after the deceit had been accomplished. See supra ¶ 21.[12] *550 Later acts are as much a part of the “surrounding circumstances” as acts and statements made prior to the deception. Furthermore, Jackson’s non-performance was not the only fact presented by the State to support the theory of guilt. See supra ¶ 22.[13] The majority opinion simply disregards the other evidence in deference to Jackson’s view of the case, to the detriment of the jury’s verdict.
[¶ 34.] I dissent.

. The evidence also includes testimony regarding a later roofing contract entered into by Four Seasons. In this later contract, Jackson artificially inflated the contract bid, at the buyer's request, in order to allow the buyer to obtain a greater loan from a bank. Jackson was paid the inflated amount, then returned the excess to the buyer. Jackson received $1,000 in payment from the buyer for his participation in this scheme. This evidence was admitted at trial under Rule 404(b). The jury could have used this evidence to con- *550 elude that the Four Seasons business was a front — a common plan or scheme for Jackson to obtain illicit money.

. The majority opinion states: “[ejvidence was presented that weather conditions during this time prevented Jackson from working on certain days.” See supra ¶ 22. The contract was signed in early April 2002. Jackson had not completed the installation by November 2002 when Epperson hired another company to finish the roof work. The jury was justified in rejecting any argument that there were insufficient days throughout the entire spring, summer, or fall of 2002 to provide weather conditions favorable for roof installation, or that some other problem prevented Jackson from working.