KONENKAMP, Justice.
[¶ 1.] A jury found defendant guilty of aggravated grand theft by deception and he appeals. Because there was insufficient evidence that defendant intended to deceive his victims at the time he entered into a loan agreement or accepted loan proceeds, we reverse.
Background
[¶ 2.] Defendant Jerome Kessler met Sharon and Eugene Hemmer sometime in 2005, while defendant was handing out fliers advertising his construction business. The Hemmers hired defendant to do handyman work, and throughout the next year, he completed two projects for them. The Hemmers were satisfied with defen *134 dant’s efforts and paid him. In 2006, the Hemmers again hired defendant, and paid him for the work he completed. In the fall of 2006, defendant told the Hemmers that he had incurred some legal bills and wanted to know if he could borrow money in exchange for doing work. They loaned him $3,500. Defendant never repaid the loan, but completed certain repairs in the summer of 2007 without requesting payment.
[¶ 3.] Also in the fall of 2006, defendant asked the Hemmers if they would finance his construction of a “spec house.” [1] Defendant did not believe he could obtain financing through a bank. He proposed that they would loan him a certain amount, which he would later repay with interest. The Hemmers agreed, and the parties entered into a contract and escrow agreement. The contract provided that defendant would take periodic draws for a total of $169,000 to build a house in Brookings County, South Dakota. Upon sale of the house, he would repay the Hemmers $169,000, plus 10% interest. The contract contained an attached document setting forth the schedule of draws and interest. Throughout the remainder of 2006, and into the summer of 2007, defendant took draws in accord with the contract and constructed the home. In July 2007, defendant repaid the Hemmers $177,260.83 ($169,000, plus 10% interest).
[¶ 4.] Sometime in May 2007, Gene Hemmer agreed to finance another “spec house” for defendant to build in Brookings County. They executed a second contract substantially similar to the first, dated August 15, 2007. One difference was an increase in the loan amount: $199,990. Another difference was the absence of an attached schedule of anticipated draws and interest. Nonetheless, as with the first agreement, defendant obtained periodic draws on the loan from the Hemmers. Noted on some of the checks were the words “loan” or “draw.” Sharon Hemmer was not always present when defendant received the draws. The last four times defendant requested money, Gene was extremely ill and Sharon signed defendant’s requested draws. According to Sharon, when defendant would request a draw, she or Gene would ask how the house was coming. Defendant would usually respond, “The house is going well.”
[¶ 5.] On February 6, 2008, defendant met with the Hemmers. The meeting was held in part to discuss a contract for deed arrangement between the parties.[2] At this meeting, defendant requested a draw of $35,000 for the second Brookings home. According to Sharon, Gene asked defendant if he was inside the house finishing up, to which defendant responded, ‘Tes.” The Hemmers were concerned about the amount of money defendant had already drawn and asked him how much he had received. Defendant responded that he had already drawn approximately $220,000. The Hemmers refused to give defendant his requested $35,000.
[¶ 6.] The next day, Sharon went to Brookings to check on the progress of the house. When she saw it, she was shocked that it had no roof, no windows, and appeared to her to be a house just beginning construction. Sharon contacted defendant and her attorney, David Jencks. That evening, February 7, 2008, defendant met with the Hemmers and Jencks at the *135 Hemmers’ home. Sharon asked defendant to account for where the money had gone, to which he responded that he had no written accounting. Defendant admitted that the money was spent on things other than the construction of the house. He also admitted that he had lied to the Hemmers on the progress of the house, concerned that the Hemmers would be upset. Nonetheless, at all times defendant repeated that he intended to complete the construction and gave no indication that he did not intend on repaying the loan.
[¶ 7.] On February 8, 2008, defendant gave the Hemmers a written accounting, which showed that he had drawn $198,681.66 for the house. The accounting indicated that only $72,746 went to construction, while the rest went to other items, including defendant’s personal obligations, e.g., child support. Defendant told the Hemmers that he needed another $103,828 to finish the house. The Hemmers refused to give defendant any more money, since their own accounting revealed that defendant had drawn $216,000.
[¶ 8.] Despite not receiving any additional money, between February 8 and February 14, defendant continued to work on the house. In the meantime, however, attorney Jencks contacted Lake County Deputy Sheriff Tim Walburg. Jencks reported that defendant had stolen over $100,000 from the Hemmers. Deputy Walburg met with the Hemmers and visited the Brookings construction site. In Deputy Walburg’s videotaped interview of defendant, defendant maintained that he intended on finishing the house and that the reason he was so behind was due to poor management of his money and anxiety problems.
[¶ 9.] The Hemmers stopped defendant from working on the house and sold it for $99,000. Defendant was indicted of aggravated grand theft by deception in violation of SDCL 22-30A-3(1).[3] Under SDCL 22-30A-17.1, “Theft is aggravated grand theft, if the value of the property stolen exceeds one hundred thousand dollars.” A jury trial was held in October 2008. Defendant was found guilty. He was sentenced to ten years imprisonment, with seven suspended, on the conditions that he pay restitution plus attorney’s fees and have no contact with the Hemmers. Defendant appeals asserting that the court erred when it denied his motion for a judgment of acquittal based on the State’s failure to (1) prove venue under SDCL 23A-16-3, (2) establish identification, and (3) set forth sufficient evidence.
Analysis and Decision
[¶ 10.] Our review of a denial of a motion for a judgment of acquittal is a question of law examined de novo. State v. Packed, 2007 SD 75, ¶ 17, 736 N.W.2d 851, 856 (quoting State v. Disanto, 2004 SD 112, ¶ 14, 688 N.W.2d 201, 206 (citing United States v. Staula, 80 F.3d 596, 604 (1st Cir.1996))). “We must decide anew whether the evidence was sufficient to sustain a conviction.” Disanto, 2004 SD 112, ¶ 14, 688 N.W.2d at 206 (citations omitted). “In measuring evidentiary sufficiency, we ask ‘whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond *136 a reasonable doubt.’ ” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
[¶ 11.] We recently examined a sufficiency of the evidence question in a theft by deception conviction in State v. Morse, 2008 SD 66, 753 N.W.2d 915, 919. There, and in a subsequent case, State v. Jackson, we ruled that there must be evidence of a purpose to deceive or an intent to defraud at the time the property or money is obtained. Id. ¶ 12; see also 2009 SD 29, ¶ 18, 765 N.W.2d 541, 545-46. As we recognized in Morse, intent to defraud “ ‘means to act willfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one’s self.’ ” 2008 SD 66, ¶ 12, 753 N.W.2d at 919 (citation omitted).
[¶ 12.] This case is not comparable to Morse or Jackson. In those cases, the defendants obtained money from another based on a promise to complete certain construction work. The money was paid to Morse and Jackson with no expectation for repayment. Rather, Morse and Jackson were paid based on their promises to perform then* agreed-upon work. When Morse and Jackson did not complete the work as promised, theft by deception charges ensued and convictions were obtained. On appeal, we found insufficient evidence to sustain the theft by deception convictions because there was no evidence in either case that at the time Morse or Jackson obtained the money that they intended to deceive.
[¶ 13.] Here, defendant was not paid any money based on his promise to complete certain construction work. He was loaned money under a loan contract, which money, plus interest, was due regardless of defendant’s completion of the construction work. That this situation involved a loan contract, rather than monies paid based on a promise to perform certain construction work, is further evident based on the fact that the Hemmers’ loan to defendant was secured to a certain extent by the real estate the home was being constructed on.[4] When defendant pur *137 chased the land, it was titled in the name of the Hemmers’ trust.
[¶ 14.] Defendant’s obligation to repay the Hemmers existed regardless of whether he completed construction on the home. He was building the house for his own profit. The Hemmers’ profit would come from the interest defendant would pay on the loan. There was no specific date in the contract by which defendant was required to repay the Hemmers. Most importantly, however, there was no claim by the Hemmers that at the time defendant obtained any of the advances he had no intent on repaying them under the terms of the parties’ loan contract. In fact, under the contract, from the dates of each draw, the Hemmers accrued 10% interest on defendant’s loan obligation, which interest would continue to accrue until defendant repaid Hemmers.
[¶ 15.] Theft by deception is a specific intent crime that requires proof that defendant obtained property with the intent to defraud. SDCL 22-30A-3. There must be evidence that defendant acted “willfully and with the specific intent to deceive or cheat[,]” to either cause some financial loss to another or bring about some financial gain to himself. Morse, 2008 SD 66, ¶ 12, 753 N.W.2d at 919 (citations omitted). The prosecution provided no evidence that at the time defendant obtained the draws or when he entered into the loan contract, he did so with the intent to defraud. There is no pattern of conduct on defendant’s part of entering into a loan agreement and absconding with the money.[5] Rather, the evidence shows that defendant entered into an agreement similar to the one made earlier with the Hemmers that was successfully completed.
[¶ 16.] Essentially, the State argues that because defendant failed to proceed with the construction of the house in a timely fashion and spent part of the loan proceeds on items not related to the construction of the house, defendant stole money from the Hemmers by deception.[6] A crucial element of theft by deception is missing, however. There is no evidence, and nothing by which this Court can infer such evidence, that defendant entered into the loan agreement or obtained the loan proceeds “with the intent to defraud[.]”[7] See SDCL 22-30A-3.
*138 [¶ 17.] We recognize that at times when defendant obtained money under the loan agreement, he lied to the Hemmers about the progress on the house, which may have “[c]reate[d] or reinforce[d] a false impression as to law, value, intention, or other state of mind.” See SDCL 22-30A-3(1). Yet, creation of these false impressions about the progress on the house in no way supplanted the requisite proof of the “intent to defraud” element. There is no evidence that at the time defendant obtained the draws from the Hemmers that he deceived them into believing he would repay the loan, when in fact he had no such intent. Moreover, while the loan contract states that defendant is to “pay from such loan proceeds for all material and labor used in the construction of such house[,]” this clause is not exclusive.
[¶ 18.] A careful reading of the parties’ Construction Loan and Escrow Agreement reveals no promise by defendant to apply all loan proceeds to the construction of the “spec house.” Indeed, at the time defendant obtained the loan proceeds, he obtained additional debt, and had a consequent obligation to repay it. There is no evidence that at the time he received the loan proceeds he intended to deprive the Hemmers of their money. As the contract states, “all monies lent by Hemmers” to defendant under the contract were to be repaid in full plus 10% interest. Thus, regardless of defendant’s progress on the house or where he spent the loan proceeds, defendant was indebted to the Hemmers for the full loan amount, plus 10% interest.[8] The statute under which defendant was charged does not criminalize defaulted loans.
[¶ 19.] There being no evidence to support proof that defendant entered into the loan agreement, or obtained loan proceeds, with the intent to defraud the Hemmers, there is insufficient evidence to sustain defendant’s conviction. Because the conviction cannot stand, we need not consider whether the State proved venue or established identification.
[¶ 20.] Reversed.
[¶ 21.] MEIERHENRY and SEVERSON, Justices, concur.
[¶ 22.] GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

. A "spec house” is built for sale with no specific purchaser in mind. See Jutting v. Hendrix, 2000 SD 25, ¶ 3 n. 2, 606 N.W.2d 140 n. 2.

. At the time, defendant had been living at a residence on the Hemmers’ acreage outside of Wentworth. Defendant was living there as part of an agreement that he would buy the acreage through a contract for deed.

. SDCL 22-30A-3(l) provides:
Any person who obtains property of another by deception is guilty of theft. A person deceives if, with intent to defraud, that person:
(1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind. However, as to a person’s intention to perform a promise, deception may not be inferred from the fact alone that that person did not subsequently perform the promise....

. This situation is equally dissimilar to the decision in State v. Phair, 2004 SD 88, 684 N.W.2d 660, relied upon in Justice Zinter’s dissent. Phair was charged with theft by deception for her failure to "disclose a known lien, adverse claim or other legal impediment to the enjoyment of property....” See id. (quoting SDCL 22-30A-3(4)). Defendant was charged with theft by deception in "[c]reat[ing] or reinforce[ing] a false impression, including false impressions as to law, value, intention, or other state of mind[J” See SDCL 22-30A-3(1). Phair's decision not to disclose a known impediment to her lender is irrelevant to deciding whether there is sufficient evidence to convict a defendant for creating or reinforcing false impressions with the intent to defraud. In Phair, the Court examined whether it was acceptable to exclude evidence of Phair's intent to repay the loan. Properly, the Court concluded that evidence of an intent to repay the loan did not save a defendant from conviction for a failure to "disclose a known lien, adverse claim or other legal impediment to the enjoyment of property” under SDCL 22-30A-3(4), because regardless of the intent to repay, Phair made the improper disclosure at the time the loan was obtained. Here, the parties' contract provided that the Hemmers would loan defendant money and defendant would repay under the terms of the agreement. There is no evidence that defendant intended not to fulfill his obligation to repay. This lack of evidence, unlike the evidence that the defendant in Phair intended to repay, is important in light of the fact that an intent to defraud " 'means to act willfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one’s self.”' See Morse, 2008 SD 66, ¶ 12, 753 N.W.2d at 919 (citations omitted). There is no evidence that defendant intended to cause a financial loss to the Hemmers or a gain to himself. Regardless of his use of the loan *137 proceeds for personal expense, defendant remained obligated to repay on the loan and there is no evidence that he did not intend on fulfilling this obligation.

. Both dissents contend that there is evidence of a common scheme by defendant to support finding defendant guilty of theft by deception in this case. These claims miss the mark because the previous situations in which defendant obtained money did not involve construction loan agreements. In those instances, defendant was paid money, with no expectation of repayment, based on his promise to complete certain work. See infra note 6.

. The State called witnesses who testified about construction projects defendant failed to complete despite being paid. Those instances did not involve loan agreements with defendant. In those cases defendant was paid to complete certain construction work and it did not get completed as promised. Here, defendant did not promise to complete construction of the Brookings home in a certain amount of time, or agree to construct the home per Hemmers’ desires. Therefore, while the loan was for the purpose of constructing a "spec house,” the other construction-related experiences with defendant provided no proof that defendant did not intend on repaying the Hemmers under the terms of the loan agreement.

.Although Justice Zinter’s dissent is correct that defendant falsely represented the status of the house in order to obtain additional advances under the terms of the parties' contract, these false representations alone do not establish that at the time he obtained the draws he intended to defraud the Hemmers under the terms of the parties’ agreement. *138 No evidence was offered that defendant did not intend on repaying under the terms of the loan. The dissent’s evidence, on the other hand, supports the view that defendant failed to comply with the terms of the parties' contract, i.e., the expending of funds for labor and expenses. Defendant's failure to comply with the contract terms, however, is a breach of contract, not theft by deception.

. Contrary to Justice Zinter’s claim that it can be inferred from defendant’s failure to complete the project that he had the intent to defraud, such inference would be improper in this case. The parties' contract does not require completion by a certain date and there is no evidence that defendant obtained the advances from the Hemmers based on a promise to complete the house within a certain time.