ZINTER, Justice
(dissenting).
[¶ 35.] The majority reverses, finding no evidence of deception with intent to defraud because this case involved a loan and there was no evidence “at the time [Kessler] obtained the draws or when he entered into the loan” that he “had no intent [to repay Hemmers] under the terms of the parties’ loan contract.” See supra ¶¶ 14-15, 17. The majority errs in: (1) misapplying our standard of review; (2) failing to consider Kessler’s history of similar schemes and the misrepresentations he made to obtain loan advances that he could not have received without deceiving Hemmers; and, (3) misapplying the law regarding intent to defraud in loan transactions. Kessler concededly made misrepresentations to obtain four advances that were restricted by the agreement to be used “for the purpose of purchasing such lot and constructing such house.”[9] When the misrepresentations are considered with Kessler’s history under the correct legal standards, a rational jury could have found that he obtained $105,000 from the Hemmers by deception. Because “[a]mounts involved in thefts, whether from the same person or several persons, committed pursuant to one scheme or course of conduct, may be aggregated in determining the degree of the offense,” SDCL 22-30A-18, and because “[t]heft is aggravated grand theft, if the value of the property stolen exceeds one hundred thousand dollars,” SDCL 22-30A-17.1, I would affirm the circuit court.
[¶ 36.] The majority correctly observes “that there must be evidence of a purpose to deceive or an intent to defraud at the time the property or money is obtained.” Supra ¶ 11 (emphasis added) (citing State v. Morse, 2008 SD 66, ¶ 12, 753 N.W.2d 915, 919; State v. Jackson, 2009 SD 29, ¶ 18, 765 N.W.2d 541). In this case, Kes-sler obtained money in the form of checks (loan advances) from the Hemmers on four occasions when there is no dispute he made misrepresentations. The first of those occasions was on September 14, 2007, and the last on November 27, 2007. The aggregate amount obtained was $105,000.
[¶ 37.] Because that money was advanced for construction of the house, on each of these occasions Sharon Hemmer inquired about the status of the house. Kessler falsely responded that “the house was doing well.” In his last unsuccessful attempt to obtain an advance, Kessler falsely represented that construction had proceeded to the point that he was “inside the house finishing up.” Supra ¶ 5. There is, however, no dispute that only limited framing had been completed, the house had no windows, no roof, and it appeared to only be at the beginning stage of construction. Supra ¶ 6. Thus, the majority properly concedes that Kessler “lied to the Hemmers about the progress on the house, which may have ‘[c]reated or reinforce[d] a false impression as to the law, value, intention, or other state of mind.’ ” Supra ¶ 17.
[¶ 38.] Further, there is no dispute that Kessler had no money to finish the project or repay the loan, and that he used the advances for personal purposes unrelated *142 to the house. Moreover, there was evidence of a common scheme (involving three other projects) in which Kessler would obtain money for other construction projects, but divert the money for personal use and fail to complete the project. See supra ¶¶ 26-28 (Gilbertson, C.J., dissenting). See also Iowa v. Rivers, 588 N.W.2d 408 (Iowa 1998) (concluding there was sufficient evidence in light of prior history of obtaining payments without completing the project); Baker v. State, 588 So.2d 945 (Ala.Crim.App.1991) (same).
[¶ 39.] Considering Kessler’s financial condition, his common scheme, and the nature of his misrepresentations, a jury could have concluded that Kessler’s lies were intended to obtain money by deception on those four occasions. This evidence was sufficient to support the jury’s finding that Kessler “obtained property of another by deception,” and that he did so with intent to defraud by “creating] or reinforcing] a false impression” regarding existing facts, aside from his intent to repay the loan in the future. The existing facts included the status of the project and his use of the advances, either one of which was sufficient to constitute aggravated grand theft under SDCL 22-30A-3(1), 22-30A-17.1, and 22-30A-18. See infra ¶ 41.
[¶ 40.] The majority attempts to create a distinction between an agreement to perform services and a loan agreement to repay money. See supra ¶¶ 12-14. The majority rationalizes that no criminal offense occurred because the money taken from Hemmers was due “regardless of defendant’s completion of the construction,” that the loan “was secured to a certain extent,” supra ¶ 13, and that Hemmers were entitled to interest at 10% from the date of each draw, supra ¶ 14. Thus, the majority proclaims there was “no evidence, and nothing by which this Court can infer such evidence, that defendant entered into the loan agreement or obtained the loan proceeds ‘with the intent to defraud.’ ” Supra ¶ 16. In the majority’s view, there must be evidence that Kessler never intended to repay the loan; and, neither Kessler’s history of prior similar schemes nor his contemporaneous misrepresentations made to obtain advances on the loan are relevant under SDCL 22-30A-3(1) because Kessler was still required to repay a partially secured loan and Hemmers were entitled to interest. The majority states that SDCL 22-30A-3(1) “does not criminalize defaulted loans.” Supra ¶ 18. This analysis is incorrect for two reasons.
[¶ 41.] First, the majority’s rationale for not considering Kessler’s “lies,” supra ¶ 17, is at odds with our settled law on intent to defraud in loan transactions. Despite the lies Kessler used to obtain the advances, the majority finds no evidence of intent to defraud because “[t]here is no evidence that at the time defendant obtained the draws from the Hemmers that he deceived them into believing he would repay the loan, when in fact he had no such intent.” Id. This Court, however, when interpreting SDCL 22-30A-3 (including its broader historical origin in the common law of larceny by false pretenses), adopted the law that “intent to repay the loan” is irrelevant when misrepresentations are used to obtain loan advances. State v. Phair, 2004 SD 88, ¶ 7, 684 N.W.2d 660, 662-63 (holding evidence of repayment was irrelevant in case involving title misrepresentations to obtain loans). This Court explained that “[t]he gravamen of the offense is obtaining the property of another by purposely creating a false impression.” Id. In specifically rejecting the argument that evidence of “intent to not repay the loan” was required, we adopted the law “that a loan transaction may result in [the commission of this of *143 fense] where loan funds are obtained by a false pretense irrespective of the defendants intent to repay or actual repayment of the loan.” Id., ¶ 9 (citing Com. v. Lewis, 48 Mass.App.Ct. 348, 720 N.E.2d 818, 822 n. 3 (1999)) (emphasis added). The language we adopted by our reference to Lewis applied to the broad common-law offense of larceny by “false pretenses,” which underlies all aspects of SDCL 22-30A-3 and unequivocally provides:
Although couched in the form of a loan, the transaction could still result in a larceny by false pretense even if the defendant intended to repay the loan and even if the loan had been repaid; the gravamen of the charge is obtaining the funds by a false pretense and not whether there was present intent to repay or actual repayment.
Lewis, 48 Mass.App.Ct. at 346 n. 3, 720 N.E.2d at 822 n. 3 (emphasis added). In evaluating the nature of the evidence necessary to prove specific intent to deceive or cheat by causing financial loss to another in loan cases, we adopted the rule that the lender must merely be deprived of accurate information necessary to assess the risk of loss it faces:
[Sufficient intent to inflict harm can be found from the intentional withholding of information from a lender which lowers the value of the transaction due to the lender’s lack of information pertinent to the accurate assessment of the risk it faces and the propriety of extending credit to that particular individual, and because of the increased expense and difficulty of any necessary bill collection efforts. Because this intent is sufficient, it is irrelevant whether the borrower intended in good faith to repay the loan.
Phair, 2004 SD 88, ¶ 10, 684 N.W.2d at 664 (quoting U.S. v. Karro, 257 F.3d 112, 118 (2d Cir.2001)). Today’s majority errs in failing to follow our precedent that does not require proof of “intent to not repay the loan” at the time the loan was made or the advances were obtained.[10]
[¶ 42.] Second, the majority fails to follow our standard of review of the evidence. With respect to the evidence regarding Kessler’s intent in obtaining the advances, the majority attempts to justify its result by offering potential reasons why the evidence of Kessler’s prior similar schemes, his contemporaneous “lie[s] ... about the progress on the house,” supra ¶ 17, and his inability to repay the advances should not be considered evidence of intent to deceive or defraud. See supra notes 3, 4, and 5, and ¶¶ 17-18. “However, in reviewing rul *144 ings on acquittal motions, [including a case in which false statements were made to obtain loan advances], this Court does not look to the evidence favorable to the appellant.” Phair, 2004 SD 88, ¶ 16, 684 N.W.2d at 665. Therefore, the majority’s possible rationalizations improperly reweigh the evidence and fail to give the verdict the deferential inference to which it is entitled. See State v. Frazier, 2001 SD 19, ¶ 44, 622 N.W.2d 246, 261. As we have often stated: “In measuring eviden-tiary sufficiency, we [only] ask ‘whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” State v. Disanto, 2004 SD 112, ¶ 14, 688 N.W.2d 201, 206 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
[¶ 43.] Surely, if the evidence is viewed without reweighing Kessler’s history of similar conduct, his financial condition at the time of the advances, his lies to obtain the advances, and his failure to finish the project and repay the advances,[11] the evidence was sufficient to inferentially suggest he had the specific intent to “deceive or cheat” at the time he made the misrepresentations to obtain those four advances. See supra ¶ 11. Here, the jury was clearly justified in finding that through his misrepresentations, Kessler obtained $105,000 that the Hemmers would not have otherwise advanced. Through his lies, Kessler withheld information from Hemmers regarding the value of the transaction and deprived them of information pertinent to the accurate assessment of the risk they faced in making the advances. Kessler’s lies also increased the expense and difficulty of collection. Ultimately, the majority’s failure to follow South Dakota law on the nature of the evidence necessary to provide proof of intent to defraud in loan transactions, and the majority’s failure to give the jury verdict the deference to which it is entitled, provide an unprecedented form of criminal insulation to those who utilize misrepresentations to obtain loan advances. The proscription in SDCL 22-30A-3(l) is not so limited. The bench, bar and Legislature will be surprised to learn that, following the majority’s analysis, so long as a loan agreement is made with innocent intent, subsequent deceit regarding existing facts (the status and value of the collateral) employed to obtain unauthorized loan advances is not subject to the theft by deception statute. I cannot join that erroneous premise.
[¶ 44.] Because Kessler concededly lied to obtain at least $105,000 in loan advances that he, quite obviously, could not have otherwise obtained without deception, I respectfully dissent.

. The Construction Loan and Escrow Agreement, which governed the advances, further provided that Kessler was to pay from the advances "all materials and labor used in the construction of such house.” Kessler also deceived the Hemmers with respect to this condition. In obtaining the advances, he did not disclose that he was using substantial loan proceeds for purposes unrelated to the purchase of materials and labor for the house.

. The majority contends that Phair is distinguishable because it involved a different subdivision of theft by deception. See supra note 3, pointing out that subdivision (4) involves failure to disclose a lien, adverse claim, or other impediment to the property given as collateral, and subdivision (1) involves the creation or reinforcement of false impressions regarding law, value, intention, or other state of mind. The majority is mistaken because the issue is one of intent to defraud and the "intent to defraud” element is found in identical language contained in the preamble to both subdivisions. Furthermore, in the context of this case, there is no material distinction between "intent to defraud” through deception causing financial loss to another by failing to disclose a lien or other impediment regarding the home under subdivision (4) and creating a false impression regarding the home under subdivision (1). The essence of Kessler’s deception fits either subdivision. Regardless of intent to repay the loan, he made misrepresentations concerning the value of the home at the time he obtained advances. He could not have obtained the loan advances without deceiving Hemmers with regard to the status of their collateral. This is significant because, as previously noted, the entire "theft by deception [statute] is a codification of the common law offense of theft by false pretenses.” Phair, 2004 SD 88, ¶ 7, 684 N.W.2d at 662.

. The majority fails to recognize that the statute allows some inference of intent to deceive when the actor does “not subsequently perform.” See SDCL 22-30A-3(l) (providing that deception may not be inferred solely from an actor’s failure to perform a promise).