#25790-a-JKK

**2011 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES DOUGLAS LAWRENCE,                   Petitioner and Appellant,

v.

DOUGLAS L. WEBER, Warden of the
South Dakota State Penitentiary,
Sioux Falls, South Dakota,                   Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE BRUCE V. ANDERSON
Judge

\* \* \* \*

PATRICK J. GLOVER of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota                   Attorneys for petitioner
                                            and appellant.

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                        Attorneys for respondent
                                            and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2011

OPINION FILED **05/04/11**

#25790

KONENKAMP, Justice

[¶1.] James Lawrence appeals the circuit court's denial of his petition for habeas corpus, arguing that there was insufficient evidence to support his conviction for theft by deception.

**Facts and Procedural Background**

[¶2.] In January 1996, Lawrence went to the home of Marcella Koster, knocked on her door, and convinced her to let him waterproof her basement walls. Lawrence told Koster that FEMA would reimburse her for the cost of the work. Over the next several months, Lawrence went to the home four times for periods ranging from two to four hours and each time asked Koster for payment before leaving. Koster wrote Lawrence four checks totaling $5,000.90.

[¶3.] Lawrence's work was utterly deficient. He applied a substance to the walls that was essentially a water sealant but was completely ineffective as a waterproofing material. He also drilled several holes in the walls and filled them with concrete, which several expert witnesses said did almost nothing to strengthen the walls. The work did not stop the seepage in Koster's walls.

[¶4.] Each time Lawrence came to her home, Koster would ask him about the FEMA reimbursement. Lawrence's responses varied wildly. On one occasion, he told Koster that he was going to take pictures of the basement walls and send them to FEMA. On another occasion, he said he was "taking care" of the reimbursement. On yet another occasion, he told Koster that FEMA would be contacting her. Finally, he gave Koster an invoice and told her she needed to turn it

in to FEMA. The invoice was almost completely illegible, and the amount was more than Lawrence had charged Koster for his work.

[¶5.] A short time after Lawrence completed his work, Koster received a phone call from someone claiming to be a FEMA official. The caller informed Koster that he needed to take pictures of the basement. But no one came to take the pictures, and Koster concluded that the call was a fake. Eventually, Koster contacted the local FEMA office and was told that they once offered a reimbursement program similar to that described by Lawrence but that it ended in 1994. FEMA refused to reimburse Koster for any of the work.

[¶6.] On May 1, 2003, a jury found Lawrence guilty of theft by deception. He was sentenced to a term of twenty-five years in the South Dakota State Penitentiary. He then appealed to this Court, which affirmed his conviction. In June 2006, Lawrence filed a petition for writ of habeas corpus alleging, among other things, that his constitutional rights had been violated when he was convicted based on insufficient evidence. The circuit court denied the motion. Lawrence appeals.

## Standard of Review

[¶7.] "A habeas corpus applicant has the initial burden of proof to establish a colorable claim for relief." *Jenner v. Dooley*, 1999 S.D. 20, ¶ 11, 590 N.W.2d 463, 468 (citing *Johnson v. Zerbst*, 304 U.S. 458, 468-69, 58 S. Ct. 1019, 1025, 82 L. Ed. 1461 (1938)). Additionally,

> Habeas corpus can be used only to review (1) whether the court
> has jurisdiction of the crime and the person of the defendant; (2)
> whether the sentence was authorized by law; and (3) in certain
> cases whether an incarcerated defendant has been deprived of

> basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction.

*Piper v. Weber*, 2009 S.D. 66, ¶ 7, 771 N.W.2d 352, 355 (quoting *Steichen v. Weber*, 2009 S.D. 4, ¶ 4, 760 N.W.2d 381, 386). "Habeas corpus review does not substitute for direct review." *Id.* (quoting *Steichen*, 2009 S.D. 4, ¶ 4, 760 N.W.2d at 386). "The applicant for habeas corpus must satisfy the initial burden to prove the need for relief by a preponderance of the evidence." *Id.*

### Analysis and Decision

*Whether sufficient evidence was presented at trial to support a conviction for theft by deception.*

[¶8.]     When reviewing a sufficiency of the evidence claim, "[a]ll of the evidence is to be considered in the light most favorable to the prosecution." *State v. Morse*, 2008 S.D. 66, ¶ 10, 753 N.W.2d 915, 918 (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). "There must be substantial evidence to support the conviction." *Id.* "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789). "Evidence is insufficient, and therefore not substantial, when no rational trier of fact could find guilt beyond a reasonable doubt." *Id.*

[¶9.]     Lawrence was convicted of a violation of SDCL 22-30A-3, which provides:

> Any person who obtains property of another by deception is guilty of theft. A person deceives if, with intent to defraud, that person:
> > (1) Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind.

Lawrence argues that the State failed to prove that he acted with the specific intent to defraud Koster. In support of his argument, Lawrence cites three recent cases in which this Court overturned convictions for theft by deception on the ground that there was insufficient evidence that the defendants acted with the intent to defraud. *See State v. Kessler*, 2009 S.D. 76, 772 N.W.2d 132; *State v. Jackson*, 2009 S.D. 29, 765 N.W.2d 541; *Morse*, 2008 S.D. 66, 753 N.W.2d 915. All three of those defendants were contractors who either failed to complete their projects or did exceedingly poor work.

[¶10.] In *Morse*, we noted that "[t]heft by deception is a specific intent crime." 2008 S.D. 66, ¶ 12, 753 N.W.2d at 919. "Intent to defraud 'means to act willfully and with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self.'" *Id*. (quoting *State v. Heftel*, 513 N.W.2d 397, 400 (S.D. 1994)). "It is only where [actors do] not believe what [they] purposely caused [their victims] to believe, and where this can be proved beyond a reasonable doubt, that [these actors] can be convicted of theft." *Id*. (quoting *State v. Hurst*, 507 N.W.2d 918, 920 (S.D. 1993)).

[¶11.] Relying on this line of cases, Lawrence argues that there was insufficient evidence to prove that he acted with the intent to defraud Koster. He argues that "[t]he amount [he] charged for his work was more than the value of the work performed and the job was not completely finished." This fact pattern, he

claims, is similar to those in *Morse* and *Jackson*. But there were several major pieces of evidence offered against Lawrence that were not present in *Morse* and *Jackson*.

[¶12.]     First, Koster's testimony established that Lawrence repeatedly lied about the FEMA reimbursement program. She testified that she never would have allowed Lawrence to perform the work had she not believed she would be reimbursed for it. Each time Koster questioned Lawrence about the reimbursement, he continued to lead her to believe that she would be reimbursed. He told her that he was "taking care of it" or that he needed to take pictures of the basement to send to FEMA. In fact, Lawrence used the reimbursement as an excuse to do additional work on Koster's basement. Each time he came to the home, he told her that he needed to perform additional work or FEMA would not reimburse her. Lawrence never disputed that he led Koster to believe that she would be reimbursed.

[¶13.]     Next, there were several pieces of "other acts" evidence that demonstrated Lawrence knew FEMA would not reimburse Koster. The most notable was the deposition of Agatha CaJacob. Lawrence did some work for CaJacob in 1993. After completing the work, Lawrence returned to CaJacob's home in an attempt to get a signature that he claimed was necessary for FEMA reimbursement. CaJacob, however, had already contacted FEMA and was told that she would not be reimbursed for Lawrence's work. She informed him of this and refused to sign his document.

[¶14.]     Additionally, Lawrence's brother, Mike, testified for the State at trial. Mike testified that he was assisting Lawrence with the work in Koster's basement when Koster came downstairs and commented that it would be nice to be rid of the water in her basement. After she left, Mike told his brother that "if she thinks this is going to stop the water, it's not." Lawrence responded that it "wasn't [his] problem," and stated, "It's not my fault if she thinks this is going to stop the water from coming in."

[¶15.]     The final piece of evidence was the invoice that Lawrence gave to Koster that she could not read and that did not match the amount of the four checks Koster paid Lawrence. Further, the invoice did not accurately represent the work and the materials that Lawrence provided. Mike Lawrence acknowledged that the invoice did not accurately represent the work that was done or the amount that Koster was charged.

[¶16.]     There were no facts like these in *Jackson* or *Morse*. Those cases were, as this Court noted, "nothing more than civil dispute[s] involving [contractors who were], for a variety of reasons, unable to competently perform." *Morse*, 2008 S.D. 66, ¶ 29, 753 N.W.2d at 923 (Zinter, J., concurring). That is not the case here. Lawrence's actions go beyond the realm of a civil dispute, going so far as to become fraudulent and thereby criminal. Lawrence clearly did not "believe what he caused his victim to believe": that his work would waterproof the basement and that FEMA would reimburse Koster for the work. *See id.* ¶ 12, 753 N.W.2d at 919. There was ample evidence from which the jury could draw this conclusion and therefore more than sufficient evidence to prove the "intent to defraud" element. Based on this

#25790

evidence, any rational trier of fact could have concluded beyond a reasonable doubt that Lawrence was guilty of theft by deception.

[¶17.]     Affirmed.

[¶18.]     ZINTER and SEVERSON, Justices, concur.

[¶19.]     GILBERTSON, Chief Justice, concurs in result.

[¶20.]     MEIERHENRY, Justice, deeming herself disqualified, did not participate.


GILBERTSON, Chief Justice (concurring in result).

[¶21.]     I agree with the Court that there was sufficient evidence presented at trial to support a conviction for theft by deception in this case.  However, I part company with the Court in its attempts to distinguish *State v. Jackson*, 2009 S.D. 29, 765 N.W.2d 541, and *State v. Morse*, 2008 S.D. 66, 753 N.W.2d 915.  Those cases are indistinguishable from this case and for the reasons stated in my dissent in those cases, both should have been affirmed.