#26074-r-GAS

**2012 S.D. 66**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

KEVIN ROGER JUCHT,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

TIMOTHY J. BARNAUD
FRANK GEAGHAN
Assistant Attorneys General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

RONALD A. PARSONS, Jr., of
Johnson, Heidepriem &
 Abdallah, LLP
Sioux Falls, South Dakota

 and

DOUGLAS M. DAILEY of
Morgan Theeler, LLP
Mitchell, South Dakota                    Attorneys for defendant
                                          and appellant.

* * * *

ARGUED MARCH 20, 2012

OPINION FILED **09/19/12**

#26074

SEVERSON, Justice

[¶1.]		Following a jury trial, Kevin Roger Jucht was convicted of malicious intimidation or harassment, first-degree burglary, disorderly conduct, and commission of a felony while armed with a firearm. Jucht appeals, raising the following issues: (1) whether the trial court abused its discretion in excluding certain evidence from trial; (2) whether there was sufficient evidence to support Jucht's conviction for malicious intimidation or harassment; (3) whether there was sufficient evidence to support Jucht's conviction for first-degree burglary; and (4) whether there was sufficient evidence to support Jucht's conviction for commission of a felony while armed with a firearm. We reverse and remand for further proceedings.

## BACKGROUND

[¶2.]		Summer Neuman and her two daughters lived in a house in Bridgewater, South Dakota. Neuman's friend, Carrie Lape, and Carrie's daughter also lived in the house. Since Neuman moved into the house in June 2010, she has had several visitors. Some of these visitors stayed with Neuman for extended periods of time.

[¶3.]		Robert Lee Anderson owns an office building across the street from Neuman's house. Anderson is a member of the Bridgewater City Council. Several town residents complained to Anderson about men who were "marauding" around the town. Anderson believed that the men the city residents were referring to resided in Neuman's house. According to Jucht, Anderson also suspected that the

individuals residing in Neuman's house had stolen tires from Anderson and committed other thefts in town.

[¶4.] On September 21, 2010, Anderson went to a local bar in Bridgewater at around 8:30 or 9:00 p.m. After Anderson arrived at the bar, he began drinking extensively. He spoke with several individuals about the complaints he received from city residents.

[¶5.] Around 12:00 a.m., Jucht, an area farmer, arrived at the bar. Jucht eventually sat down next to Anderson. Jucht and Anderson drank beer and discussed the complaints Anderson received from city residents. Anderson soon invited Jucht to his office building.

[¶6.] After the men arrived at the office building, Anderson, who was extremely intoxicated, decided to go to Neuman's house and confront the individuals who were residing there. Because Anderson heard that the individuals living in the house possessed firearms, Anderson retrieved a nine-millimeter pistol from his gun cabinet and gave it to Jucht to hold for "protection." Jucht put the gun in the pocket of his bib overalls.

[¶7.] Around 1:45 a.m., Anderson and Jucht went across the street to Neuman's house. Anderson knocked on the screen door, pulled it open, and banged on the inside door. After the inside door opened, Anderson walked about four feet into the house. Jucht stepped one foot into the house briefly and then stepped back outside the doorway.

[¶8.] At the time Anderson and Jucht entered the house, Neuman was putting together a puzzle with one of her daughters in a room upstairs. Lape was

sleeping in the bedroom on the main floor. An acquaintance of Neuman's, who she knew only by the name "Dre," was sleeping on the couch.

[¶9.] Neuman heard a loud pounding on the front door and ran downstairs. Anderson then began yelling at Neuman, telling her that he "wanted her out of town" because she was "scaring everybody." Neuman then went to get Lape from the bedroom. Neuman and Lape argued with Anderson and told the men to leave. Anderson yelled obscenities at the women, telling them that he was on the city council, and that he was going to see that they were removed from the town.

[¶10.] At that point, Dre woke up and looked toward the door. Anderson pointed to Dre and, using a racially derogatory slur, yelled that he wanted Neuman and Lape to leave with Dre. While Anderson was arguing with Neuman and Lape, he broke the glass out of the screen door.

[¶11.] Neuman's brother and his friend then pulled up to the house in a white van. When they arrived, Jucht retreated to the middle of the street. From the street, Jucht fired three shots in rapid succession. Testimony at trial was inconsistent as to whether Jucht fired the shots into the air or whether he was aiming at the white van. After the shots were fired, Anderson walked to the street where Jucht was standing and took his pistol back from Jucht. Anderson's wife, who had been listening to a police scanner, came to the scene and took the men home.

[¶12.] The State charged Anderson with (1) malicious intimidation or harassment; (2) first-degree burglary; (3) intentional damage to property; and (4) disorderly conduct. Anderson reached a plea agreement with the State and

pleaded guilty to malicious intimidation or harassment. The State dismissed the other charges against Anderson and he received a suspended imposition of sentence and two years of probation, provided that Anderson serve 90 days in the McCook County Jail.

[¶13.] The State charged Jucht with (1) malicious intimidation or harassment; (2) first-degree burglary; (3) intentional damage to property; (4) disorderly conduct; and (5) commission of a felony while armed with a firearm. Jucht pleaded not guilty to each of the charges.

[¶14.] The State made an oral motion in limine to preclude Jucht from introducing evidence regarding Anderson's suspicion that the individuals staying in Neuman's house had stolen tires from Anderson and committed other thefts in town. The State also sought to preclude Jucht from introducing evidence that Anderson received complaints from town residents concerning the activities of the individuals Anderson believed were staying in Neuman's house. The trial court granted the motion.

[¶15.] After the State completed its direct examination of Anderson, the trial court revisited the State's motion in limine. It held that Jucht could elicit testimony from Anderson concerning complaints he received from town residents. However, the court barred the introduction of any evidence regarding Anderson's suspicion that the men staying in Neuman's house had stolen tires from him and committed other thefts in town.

[¶16.] At the close of the evidence, Jucht moved for judgment of acquittal on all counts, which the trial court denied. The jury acquitted Jucht on Count 3,

intentional damage to property, but convicted him of all the remaining charges. The trial court sentenced Jucht to suspended terms of two years and five years for malicious intimidation or harassment and first-degree burglary, respectively. Further, the trial court ordered Jucht to pay a fine of $200 plus court costs for disorderly conduct. Finally, the trial court sentenced Jucht to the mandatory minimum term of five years in the State Penitentiary for the commission of a felony while armed with a firearm.

## DISCUSSION

[¶17.] **1. Whether the trial court erred in denying Jucht's motion for judgment of acquittal.**

[¶18.] Our de novo standard of review on a challenge to the sufficiency of the evidence is well established. *State v. Morse*, 2008 S.D. 66, ¶ 10, 753 N.W.2d 915, 918. "There must be substantial evidence to support the conviction." *Id.* (quoting *State v. Tofani*, 2006 S.D. 63, ¶ 37, 719 N.W.2d 391, 401). "The inquiry does not require an appellate court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). Rather, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lawrence v. Weber*, 2011 S.D. 19, ¶ 8, 797 N.W.2d 783, 785 (quoting *Morse*, 2008 S.D. 66, ¶ 10, 753 N.W.2d at 918). "Moreover, the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence." *State v. Johnson*, 2009 S.D. 67, ¶ 10, 771 N.W.2d 360, 365 (quoting *State v. Mulligan*, 2007 S.D. 67, ¶ 7, 736 N.W.2d

808, 813). Accordingly, this Court will not resolve conflicting evidence, assess the credibility of witnesses, or reevaluate the weight of the evidence. *Id.*

*Malicious intimidation or harassment.*

[¶19.]     The jury convicted Jucht of malicious intimidation or harassment in violation of SDCL 22-19B-1, which provides:

> No person may maliciously and with the specific intent to intimidate or harass any person or specific group of persons because of that person's or group of persons' race, ethnicity, religion, ancestry, or national origin:
> . . .
> (3) Damage or destroy any real or personal property of another person . . . .

[¶20.]     Jucht argues that his conviction of malicious intimidation or harassment should be vacated because there was insufficient evidence at trial to prove beyond a reasonable doubt that he damaged or destroyed personal property with the "specific intent to intimidate or harass" the individuals in Neuman's home because of their "race, ethnicity, religion, ancestry, or national origin." *See* SDCL 22-19B-1.

[¶21.]     In response, the State notes that the trial court provided the jury with an aiding and abetting instruction. The State argues that under SDCL 22-3-3, South Dakota's aiding and abetting statute, Jucht need not have possessed a specific racist or discriminatory intent in order to be convicted of malicious intimidation or harassment. Rather, the State argues that Jucht need only have possessed knowledge of Anderson's criminal intent for a jury to convict him as an aider and abettor.

[¶22.]     SDCL 22-3-3 provides: "Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets, or advises another person in

planning or committing the crime, is legally accountable, as a principal to the crime." "To be guilty of aiding and abetting, 'the evidence must show the principal offender committed all the elements of the underlying offense.'" *Tofani*, 2006 S.D. 63, ¶ 36, 719 N.W.2d at 400 (quoting *State v. Shearer,* 1996 S.D. 52, ¶ 29, 548 N.W.2d 792, 798). Jucht concedes that there was sufficient evidence for the jury to find that Anderson, the principal, committed all the elements of malicious intimidation or harassment. Nonetheless, Jucht argues that a person may not be convicted under South Dakota's aiding and abetting statute unless that person possesses the mental state required for the commission of the underlying offense committed by the principal. Jucht's argument raises an issue of statutory interpretation that this Court reviews under the de novo standard. *State v. Powers*, 2008 S.D. 119, ¶ 7, 758 N.W.2d 918, 920 (quoting *Rotenberger v. Burghduff,* 2007 S.D. 7, ¶ 8, 727 N.W.2d 291, 294).

[¶23.]     SDCL 22-3-3 must be read in conjunction with SDCL 22-3-3.1, which provides that the distinction between a principal and an aider and abettor has been abrogated in felony cases:

> The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated. Any person connected with the commission of a felony, whether that person directly commits the act constituting the offense or aids and abets in its commission, though not present, shall be prosecuted, tried, and punished as a principal.

SDCL 22-3-3.1.

[¶24.]     The abrogation of the distinction between a principal and an aider and abettor is evident in other contexts as well. For example, "[i]t is settled law

that a conviction may be supported by proof that the defendant was either an aider or abettor even though the charging instrument charged him as a principal." *State v. Harris*, 2010 S.D. 75, ¶ 22, 789 N.W.2d 303, 311 (quoting *State v. Miller,* 429 N.W.2d 26, 41 (S.D. 1988)). *See* SDCL 23A-6-6 ("No additional facts need be alleged in an indictment or information against an accessory before the fact than are required in an indictment against his principal."). As we explained in *State v. Zemina*, South Dakota statutes have

> do[ne] away with the necessity, in the prosecution, of any reference to a defendant as an accessory. A party who aids and abets another in the commission of a criminal offense is himself a principal in the commission of such offense and is to be tried the same as though he were actually a principal . . . .

87 S.D. 291, 301, 206 N.W.2d 819, 824 (1973) (quoting *State v. Bachelor*, 67 S.D. 259, 266, 291 N.W. 738, 741 (1940)).

[¶25.]     The abrogation of the distinction between a principal and an aider and abettor in felony cases makes little practical sense unless the distinction between the requisite mental states of an aider and abettor and a principal is also abrogated. *See* Baruch Weiss*, What Were They Thinking?: The Mental States of the Aider and Abettor and the Causer Under Federal Law*, 70 Fordham L. Rev. 1341, 1365 (2002). If the mental state required of the principal diverges from the mental state required of the aider and abettor, then even when two defendants are charged with the same offense, the State's burden of proof would differ depending on whether a defendant is treated as an aider and abettor or a principal. The jury would first have to determine whether the defendant is an aider and abettor or a principal before it could determine the applicable mental state. *See id.* Ultimately,

an aider and abettor could face criminal liability where a principal could not. Grace E. Mueller, *The Mens Rea of Accomplice Liability*, 61 S. Cal. L. Rev. 2169, 2172-73 (1988) (stating that an aider and abettor "should possess the full mens rea required of a perpetrator of the substantive offense" because "[i]f it were otherwise, the judicial system would betray its dependence upon culpability by punishing people who have neither mentally nor physically committed an offense to the same extent as it punishes those who have"). *See Sharma v. State*, 56 P.3d 868, 872 (Nev. 2002) ("[I]n order for a person to be held accountable for the specific intent crime of another under an aiding and abetting theory of principal liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime."); *State v. Phillips*, 46 P.3d 1048, 1056-57 (Ariz. 2002) (holding that a defendant was not an accomplice to the crime of premeditated murder because "the evidence did not show that he intended to facilitate or aid in committing a murder"). Such a result would contradict the express statutory requirement that an individual who aids and abets in the commission of a crime "shall be prosecuted, tried, and punished as a principal." *See* SDCL 22-3-3.1.

[¶26.] We have stated that a statute "must be construed according to [its] intent," and the intent of a statute "must be determined from the statute as a whole, as well as enactments relating to the same subject." *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d 141, 143 (quoting *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611). "Statutes are to be construed to give effect to each statute and so as to have them exist in harmony."

*Rotenberger*, 2007 S.D. 7, ¶ 8, 727 N.W.2d at 294 (quoting *State v. $1,010 in Am. Currency*, 2006 S.D. 84, ¶ 8, 722 N.W.2d 92, 94). In order to give effect to SDCL 22-3-3.1, we hold that an aider and abettor must act with the mental culpability required for the commission of the underlying crime committed by the principal.

[¶27.]     The State notes that, in past cases, this Court has required the aider and abettor to "knowingly" assist the principal in the commission of the crime. *See Tofani*, 2006 S.D. 63, ¶ 46, 719 N.W.2d at 405 (holding there was sufficient evidence to sustain a defendant's conviction for aiding and abetting aggravated assault and rape because "a rational trier of fact could reasonably infer that [the defendant] knowingly assisted in the commission of these crimes"); *State v. Brings Plenty*, 490 N.W.2d 261, 268 (S.D. 1992) (holding there was sufficient evidence to sustain a defendant's conviction for second-degree murder under South Dakota's aiding and abetting statute because the defendant "knowingly did something to assist in the commission of [the] crime"). These cases typically involved general intent crimes. *See id.* But to the extent there is any inconsistency in our prior caselaw,[1] we now clarify that when the underlying criminal statute prescribes a

---

1.     Some of our prior cases indicate that a defendant is criminally liable as an aider and abettor for any offense that is a reasonably foreseeable consequence of the defendant's actions. *See Graham v. State*, 346 N.W.2d 433 (S.D. 1984) (upholding a defendant's conviction for manslaughter in the first degree under South Dakota's aiding and abetting statute because the defendant's actions "set[ ] in motion a chain of events" that led to the death of the victim, and the victim's death "should have been within [the defendant's] contemplation when the motion was initiated"); *Shearer*, 1996 S.D. 52, 548 N.W.2d 792 (finding there was sufficient evidence to support the defendant's conviction for aiding and abetting the possession of methamphetamine because the defendant introduced the principal to a drug dealer so that the principal could purchase marijuana, and the defendant

(continued . . .)

particular mental state for the principal, a jury must find that a defendant

possessed the underlying mental state required of the principal in order to be

convicted under South Dakota's aider and abettor statute.[2]  This holding is

_____

(. . . continued)
>  "reasonably should have contemplated that purchases of other drugs could result").  This approach effectively holds a defendant who is charged as an aider and abettor criminally liable as a principal, regardless of whether the defendant shared the principal's mental culpability, or whether the defendant even had knowledge of the principal's criminal intent.  Because this approach is in direct conflict with SDCL 22-3-3.1, we reject the reasoning of these prior cases and hold that an aider and abettor must act with the mental culpability required for the commission of the underlying crime.

2.  This Court has previously recognized that an aider and abettor must share the intent of the principal in order to be criminally liable for premeditated murder.  For example, in *Woods v. Solem*, 405 N.W.2d 59 (S.D. 1987), we considered whether a 14-year-old boy, Garcia, could be convicted of premeditated murder as an aider and abettor under SDCL 22-3-3 and SDCL 22-3-3.1.  We stated:

> Under the settled law of this state, can this Court hold that Garcia is liable to a prosecution for the identical offense charged against the defendant on trial, namely, premeditated murder? We think not. . . .  We do not believe that Garcia knowingly, voluntarily, and with a common intent—with the principal offender—united in the commission of the crime of premeditated murder.

*Woods*, 405 N.W.2d at 63.  Similarly, in *State v. Bradley*, 431 N.W.2d 317 (S.D. 1988), this Court upheld the trial court's rejection of the defendant's proposed jury instruction on accomplice testimony.  We explained that the evidence did not support the defendant's allegation that the testifying witness was an accomplice to the defendant's crime of premeditated murder:

> As in *Woods,* the evidence does not indicate that [the witness] "knowingly, voluntarily, and with a common intent—with the principal offender—united in the commission of the crime of premeditated murder."  No evidence suggests that he promoted, facilitated, planned or participated in premeditated murder. Nor is there evidence that he aided, abetted, or advised [the defendant] in committing premeditated murder.

(continued . . .)

consistent with the holdings of the majority of jurisdictions that have addressed this issue:

> If the prosecution is relying on an aiding and abetting theory to establish a defendant's liability, a majority of jurisdictions have concluded that the accomplice must share the criminal intent of the principal. . . . Every federal Court of Appeals has adopted the requirement that an accomplice be shown to have intended that the principal succeed in committing the charged offense, and the federal appellate courts have thus rejected, explicitly or implicitly, a standard that would permit the conviction of an accomplice without the requisite showing of intent. A majority of state courts have also adopted this approach.

1 Wharton's Criminal Evidence § 3:17 (15th ed. 2011) (citations omitted). *See* Audrey Rogers, *Accomplice Liability for Unintentional Crimes: Remaining Within the Constraints of Intent*, 31 Loy. L.A. L. Rev. 1351, 1356-57 (1998) (noting that, in order for a jury to convict a defendant as an aider and abettor to an offense, "first, the [aider and abettor] must have the intent to aid the principal in the commission of the offense; and second, the [aider and abettor] must have the mens rea required by the underlying offense"); Wayne R. LaFave, *Accomplice Liability–Acts and Mental State,* 2 Subst. Crim. L. § 13.2(c) (2d ed. 2011) ("Although one might conclude . . . that what the law *does* require is that the accomplice intend to aid or encourage what he knows is criminal conduct by another, this is an overstatement. The prevailing view is that the accomplice must also have the mental state required for the crime of which he is to be convicted on an accomplice theory.").

[¶28.]    Importantly, Jucht does not argue the trial court erroneously instructed the jury regarding the mental state required of an aider and abettor.

---

(. . . continued)

*Bradley*, 431 N.W.2d at 322 (quoting *Woods,* 405 N.W.2d at 63).

Jucht only argues that there was not a sufficient basis for the jury's finding that Jucht was guilty of malicious intimidation or harassment. We will restrict our review of this case to the issue raised.

[¶29.] This Court has recognized that "[c]ircumstantial evidence is critically important in [determining the intent of an aider and abettor] because a state of the mind is rarely proved by direct evidence." *Tofani*, 2006 S.D. 63, ¶ 45, 719 N.W.2d at 404 (citations omitted). During the trial, Anderson testified that Jucht approached him in the bar and asked, "[W]hat's—what's all this I hear about the stuff that's going on up the street in town[?]" Anderson testified that while he and Jucht were discussing the individuals who were residing in Neuman's house, Jucht stated, "[I]t would be nice if somebody would run them out . . . it's too bad that somebody don't run them out of town."

[¶30.] Several witnesses testified that while Anderson was arguing with Neuman and Lape, he broke the glass out of the screen door.[3] Anderson testified that, while he was arguing with Neuman, he pointed to Dre, who was sitting on a couch in the living room, and yelled, "Why don't you n****** get—get the hell out of town if this is the kind of shit you're going to pull." Neuman testified that Anderson pointed to Dre and said, "We want you to leave with him, you n*****." According to both Anderson and Neuman, Jucht was standing directly behind Anderson when these comments were made.

---

3. Neuman also testified that after the men left, she noticed the latch on the screen door was broken.

[¶31.]     The record also shows that Jucht brought Anderson's pistol with him to Neuman's house.  When the two men arrived, Anderson testified that Jucht grabbed the handle of the door to Neuman's house, "leaned up against it and—and it opened."  But Neuman testified that "the door had came open, like, had been kicked open."  Finally, after Neuman's brother and his friend pulled up to the house, Jucht walked to the middle of the street and fired three shots in rapid succession.

[¶32.]     Viewing the evidence in a light most favorable to the State, there was a sufficient basis for the jury's finding that Jucht was guilty of malicious intimidation or harassment under South Dakota's aiding and abetting statute.  We therefore hold the trial court did not err in denying Jucht's motion for acquittal on his conviction for malicious intimidation or harassment.

*First-degree burglary*

[¶33.]     Jucht was convicted of first-degree burglary in violation of SDCL 22-32-1(3).  The statute states, in pertinent part:

> Any person who enters or remains in an occupied structure, with intent to commit any crime, unless the premises are, at the time, open to the public or the person is licensed or privileged to enter or remain, is guilty of first degree burglary if:
> . . .
> (3) The offense is committed in the nighttime.

SDCL 22-32-1.

[¶34.]     Jucht concedes there was sufficient evidence from which a reasonable jury could conclude that Jucht entered Neuman's house at nighttime.  However, Jucht argues there was not sufficient evidence to support the jury's finding that he did so with the intent to commit the underlying crimes named in the indictment

and the jury instructions. Specifically, the jury was instructed that the State was required to prove Jucht unlawfully entered the premises "with the intent to commit the crimes of Malicious Intimidation or Harassment" or "Intentional Damage to Property."

[¶35.]    Jucht argues that he lacked the specific intent to intimidate any person on the basis of race or ethnicity, which is a necessary element of the crime of malicious intimidation or harassment. However, we held above that there was sufficient circumstantial evidence to support the jury's finding that Jucht was guilty of malicious intimidation or harassment under South Dakota's aiding and abetting statute. Further, we hold that there was sufficient circumstantial evidence to support the jury's finding that Jucht possessed the criminal intent required under South Dakota's malicious intimidation or harassment statute at the time he unlawfully entered Neuman's home. We find no merit to Jucht's claim that his conviction for malicious intimidation or harassment cannot serve as the underlying predicate for Jucht's first-degree burglary charge.

*Commission of felony while armed with a firearm.*

[¶36.]    The State charged Jucht with the commission of a felony with a firearm under SDCL 22-14-12. The statute provides:

> Any person who commits or attempts to commit any felony while armed with a firearm, including a machine gun or short shotgun, is guilty of a Class 2 felony for the first conviction. A second or subsequent conviction is a Class 1 felony. The sentence imposed for a first conviction under this section shall carry a minimum sentence of imprisonment in the state penitentiary of five years. In case of a second or subsequent conviction under this section such person shall be sentenced to a minimum imprisonment of ten years in the penitentiary.

> Any sentence imposed under this section shall be consecutive to any other sentences imposed for a violation of the principal felony. The court may not place on probation, suspend the execution of the sentence, or suspend the imposition of the sentence of any person convicted of a violation of this section.

SDCL 22-14-12.

[¶37.]     Jucht was convicted of two felonies: malicious intimidation or harassment and first-degree burglary. His other convicted count, disorderly conduct, is a misdemeanor. Jucht argues that the two felony convictions are not supported by the evidence and, therefore, the trial court erred in denying Jucht's motion for judgment of acquittal on the charge of commission of a felony while armed with a firearm.

[¶38.]     Above, we held that there was sufficient evidence in this case to support the jury's finding that Jucht was guilty of malicious intimidation or harassment under South Dakota's aiding and abetting statute. We also held that there was sufficient circumstantial evidence to support Jucht's conviction for first-degree burglary. Thus, Jucht's argument is without merit. The trial court did not err in denying Jucht's motion for judgment of acquittal on his conviction of commission of a felony while armed with a firearm.

[¶39.]     **2.     Whether the trial court erred in excluding evidence offered by Jucht.**

[¶40.]     The State made an oral motion in limine to preclude Jucht from introducing evidence that Anderson suspected the individuals residing in Neuman's house had stolen tires from Anderson and committed other thefts in town. The State also sought to preclude Jucht from introducing evidence that Anderson received complaints from town residents about individuals who were

allegedly residing in Neuman's house. In addressing the State's motion, the trial court expressed concern that the evidence would be used at trial to improperly attack Neuman's credibility as a witness. The trial court explained, "It's one thing to . . . allow some testimony so that the defendant can assert his defense, . . . but it's another thing to . . . use unproven allegations to attack collaterally the credibility of another witness, in this case, Summer Neuman." The trial court granted the State's motion, but noted that "the better time to resolve this issue . . . is after the direct examination of Bobby Anderson."

[¶41.]        Following the State's direct examination of Anderson, the trial court revisited the State's motion in limine. It held that Jucht could elicit testimony from Anderson concerning complaints he received from town residents. The trial court determined this was relevant evidence of Jucht and Anderson's motive for going to Neuman's house. However, the court barred the introduction of any evidence regarding rumors that Neuman or other individuals staying in her house had committed thefts. The trial court concluded that, under SDCL 19-12-3 (Rule 403), the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.

[¶42.]        Jucht argues the evidence regarding Anderson's suspicion that individuals staying in Neuman's house were committing thefts in town was highly relevant to show that Jucht and Anderson lacked the "specific intent to intimidate or harass" the individuals in Neuman's home "because of" their "race, ethnicity, religion, ancestry, or national origin." *See* SDCL 22-19B-1.

[¶43.]    "We afford broad discretion to circuit courts in deciding whether to admit or exclude evidence." *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 8, 809 N.W.2d 834, 836 (quoting *Kurtz v. Squires,* 2008 S.D. 101, ¶ 3, 757 N.W.2d 407, 409). "A trial court's evidentiary ruling that limits cross-examination will be reversed only when there is a clear abuse of discretion as well as a showing of prejudice to the defendant." *State v. Bruce*, 2011 S.D. 14, ¶ 17, 796 N.W.2d 397, 403 (citing *State v. Fasthorse,* 2009 S.D. 106, ¶ 14, 776 N.W.2d 233, 238). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Ronan*, 2012 S.D. 6, ¶ 8, 809 N.W.2d at 836 (quoting *St. John v. Peterson,* 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74). "A misapplication of the rules of evidence is by definition an abuse of discretion." *State v. Dillon*, 2010 S.D. 72, ¶ 37, 788 N.W.2d 360, 371 (citing *State v. Guthrie,* 2001 S.D. 61, ¶ 30, 627 N.W.2d 401, 415).

[¶44.]    The factual relevance of evidence is determined under SDCL 19-12-1 (Rule 401), which provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[¶45.]    Under SDCL 19-12-3 (Rule 403), relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In this case, the trial court concluded the probative value of evidence regarding Anderson's suspicion that individuals staying in Neuman's house had stolen tires from him and committed other thefts in town was substantially outweighed by the danger of

unfair prejudice. The trial court noted that if this evidence were admitted, it could lead the jury to infer that Neuman and Lape, who both testified during the trial, were involved in the alleged thefts.

[¶46.] While the trial court correctly noted that it would be improper for Jucht to attack the credibility of Neuman and Lape with evidence of the reported thefts, this was not the purpose for which Jucht sought to offer the evidence. Rather, Jucht sought to offer the evidence to show that Jucht and Anderson lacked the "specific intent to intimidate or harass" the individuals in Neuman's home "because of" their "race, ethnicity, religion, ancestry, or national origin." *See* SDCL 22-19B-1. Because such specific intent is a necessary element of the crime of malicious intimidation or harassment, the evidence Jucht sought to introduce was a vital component of his defense. The probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. We therefore hold that the trial court abused its discretion in precluding Jucht from eliciting testimony from Anderson regarding his suspicion that individuals staying in Neuman's house had stolen tires from Anderson and committed other thefts.

[¶47.] We have stated that "[e]ven if a trial court's evidentiary ruling is erroneous, the error must be prejudicial in nature before we will overturn the ruling." *State v. Fisher*, 2011 S.D. 74, ¶ 32, 805 N.W.2d 571, 578 (citing *State v. Mattson,* 2005 S.D. 71, ¶ 13, 698 N.W.2d 538, 544). "Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it." *Id.* (internal quotation marks omitted).

[¶48.]	We have recognized that an accused must "be afforded a meaningful opportunity to present a complete defense." *State v. Packed*, 2007 S.D. 75, ¶ 27, 736 N.W.2d 851, 860 (quoting *State v. Iron Necklace,* 430 N.W.2d 66, 75 (S.D. 1988)). "Those denied the ability to respond to the prosecution's case against them are effectively deprived of a 'fundamental constitutional right to a fair opportunity to present a defense.'" *Id.* (quoting *State v. Lamont,* 2001 S.D. 92, ¶ 16, 631 N.W.2d 603, 608). Here, the trial court's ruling excluded relevant evidence of Jucht and Anderson's intent. In all probability, the ruling affected the final result of the trial and deprived Jucht of "a meaningful opportunity to present a complete defense." *See id.* Accordingly, we hold that the trial court committed a prejudicial error by precluding Jucht from introducing evidence regarding Anderson's suspicion that the individuals staying in Neuman's house stole tires from Anderson and committed other thefts.

[¶49.]	Reversed and remanded for a new trial.

[¶50.]	GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.