#28681-a-LSW
**2019 S.D. 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

BEAU DEAN FOOTE, SR.,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
STANLEY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA DEVANEY
Judge

\* \* \* \*

BRAD A. SCHREIBER
Pierre, South Dakota                          Attorney for defendant and
                                       appellant.

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
QUINCY R. KJERSTAD
Assistant Attorneys General
Pierre, South Dakota                          Attorneys for plaintiff and
                                       appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
APRIL 29, 2019
OPINION FILED **06/19/19**

#28681

WILBUR, Retired Justice

[¶1.]        Beau Dean Foote Sr. was convicted of resisting arrest; he does not dispute this conviction. He was also convicted of two counts of aggravated assault against a law enforcement officer. For these convictions, he claims the evidence was insufficient because, in his view, a Taser is not a dangerous weapon and he did not attempt to use the Taser to cause serious bodily harm to either officer. We affirm.

## Background

[¶2.]        Parole Agent Mike Stolley and Stanley County Deputy Sheriff Greg Swanson went to a residence in Fort Pierre to execute an arrest warrant for Foote. Foote was on parole at the time, and Agent Stolley was his parole agent. Agent Stolley knocked on the front door and announced his presence while Deputy Swanson stood outside the back door. No one came to the front door, but Agent Stolley heard a sound from inside suggesting that someone was moving. The front door was unlocked, and Agent Stolley entered the residence and called for Foote. At the same time, Deputy Swanson entered the residence through the back door and began walking down a hallway toward the living room.

[¶3.]        Once inside, Agent Stolley saw Foote lying face down on the floor of the living room. Agent Stolley tried to handcuff him, but Foote jumped up and ran down the hallway toward Deputy Swanson. Deputy Swanson pushed Foote onto the couch, and in doing so, the deputy's Taser fell out of its holster. Foote noticed the Taser had fallen and reached for it at the same time as Deputy Swanson. A short but intense struggle ensued while Deputy Swanson wrestled Foote to attempt to gain control of the Taser. Foote held the pistol grip and pointed it at the deputy's

-1-

face. Deputy Swanson grabbed the barrel of the Taser and pushed it away from his face. The probes deployed and lodged into the back of the couch. Deputy Swanson became tangled up in the Taser wires and received an electrical shock. He continued to receive electrical shocks as the Taser fired three more times. The repeated electrical shocks caused Deputy Swanson to lose his partial grip of the Taser.

[¶4.]        With full control of the Taser, Foote focused his efforts on Agent Stolley. He pushed the barrel against Agent Stolley's chest and pulled the trigger. Agent Stolley's bulletproof vest prevented him from being stunned. Agent Stolley drew his weapon and pointed it at Foote. Foote dropped the Taser and put his hands behind his back. Although he initially seemed amenable to arrest, Foote again resisted while handcuffed, kicking at the officers and trying to wriggle free. After being placed in wrist and ankle restraints, with an attachment to his waist, Foote was arrested and taken into custody.

[¶5.]        Foote was charged with two counts of aggravated assault with a dangerous weapon against a law enforcement officer, and in the alternative two counts of simple assault against a law enforcement officer. Foote was also charged with resisting arrest. The State filed a part II information alleging Foote to be a habitual offender. Foote pleaded not guilty, and after a trial, the jury found Foote guilty of two counts of aggravated assault against a law enforcement officer and guilty of one count of resisting arrest. After Foote admitted to the part II information, the court imposed sentence.

[¶6.]     Foote appeals, asserting the circuit court erred when it denied his motion for a judgment of acquittal.  He also challenges the sufficiency of the evidence for both convictions of aggravated assault against a law enforcement officer.

## Analysis

[¶7.]     Foote combines his arguments as to both issues because whether the circuit court erred when it denied a judgment of acquittal and whether sufficient evidence exists to support a verdict implicate the same standard of review.  Both questions require us to examine "whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342.  A circuit court properly denies a motion for a judgment of acquittal if the State produces evidence that—if believed by the jury—may reasonably support a guilty verdict.  *State v. Abdo*, 518 N.W.2d 223, 227 (S.D. 1994).  Our review as to the sufficiency of the evidence to sustain the convictions is de novo.  *State v. Jucht*, 2012 S.D. 66, ¶ 18, 821 N.W.2d 629, 633.  However, we do not resolve conflicts in the evidence, "assess the credibility of witnesses, or reevaluate the weight of the evidence." *Id.*

[¶8.]     Foote was found guilty of two counts of aggravated assault against a law enforcement officer in violation of SDCL 22-18-1.1 and SDCL 22-18-1.05.  Aggravated assault occurs when "[a]ny person . . . [a]ttempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon[.]"  SDCL 22-18-1.1(2).  Foote claims the State presented insufficient evidence to prove he possessed a

*dangerous weapon*. More specifically, he argues a Taser is not a dangerous weapon because it was not calculated or designed to cause serious bodily injury or death and it was not used in a manner that was likely to inflict death or serious bodily harm.

[¶9.]　　　The Legislature has defined a *dangerous weapon* to be "any firearm, *stun gun*, knife, or device, instrument, material, or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm[.]" SDCL 22-1-2(10) (emphasis added). From the language of the statute *any stun gun* is, by definition, a dangerous weapon, and a Taser is a type of stun gun. *See* SDCL 22-1-2(50) (defining "Stun gun"). Therefore, contrary to Foote's argument, we need not determine whether a Taser is calculated or designed to cause serious bodily injury or death or whether Foote used the Taser in a manner that was likely to inflict death or serious bodily harm. The State presented sufficient evidence that Foote used a dangerous weapon—a stun gun.

[¶10.]　　　Foote, however, further contends that insufficient evidence exists to establish beyond a reasonable doubt that he attempted to use the Taser to cause bodily harm to Agent Stolley or Deputy Swanson. He contends there is no evidence establishing his intent and neither Deputy Swanson nor Agent Stolley suffered serious injuries. In his view, the evidence established he merely acted in an effort to get away and avoid being arrested.

[¶11.]　　　At trial, the State presented testimony from two witnesses regarding whether a Taser can cause serious bodily harm in the manner used by Foote. Jeffery Hill, an instructor on the "Taser platform" since 2010, explained that a

person can receive an electrical shock by coming into contact with the wires after the Taser deploys and can continue to receive an electrical shock if the trigger is held continuously or depressed again. In regard to Deputy Swanson's Taser, Hill testified that it produced eighteen seconds of electrical shock after the probes deployed into the couch. In Hill's opinion, this type of continuous exposure to conductive electronic weapons could cause cardiac arrest. He also opined that a Taser deployed while pointed at someone's face would "cause severe damage."

[¶12.] Don McCrea is an instructor with the Division of Criminal Investigation and is certified in the mechanics and use of a Taser. He testified that Deputy Swanson's Taser is a type of "stun gun" because "it is [a] conductive electronic weapon. . . . It sets up a major neurological interface, . . . and people cannot operate properly, and it sends their muscles into overload and spasms and creates quite a bit of pain." He explained that depending on how the weapon is used, it can cause death. And according to McCrea, it "[m]ost certainly" can cause serious bodily injury. He further opined that pointing the Taser at someone's face and pulling the trigger "would be considered deadly force[.]"

[¶13.] Agent Stolley and Deputy Swanson also testified. According to Deputy Swanson, after Foote grabbed the Taser (although at the same time as the deputy), he pointed the barrel at the deputy's face. Deputy Swanson explained that Foote held the Taser "three or four inches away from [his] face[.]" Although Deputy Swanson grabbed the barrel and "pushed it toward the center of the couch," he was "in fear that [Foote] would figure out how to get the safety off and shoot [him] with it." Eventually the safety did deactivate and the Taser deployed causing Deputy

Swanson to experience electrical shocks and become immobilized. He claimed that Foote kept pulling the trigger, which caused him to continue to be immobilized. He further claimed that once Foote obtained full control of the Taser, he pointed it at Agent Stolley's chest.

[¶14.]    Agent Stolley similarly testified that once Foote had full control of the Taser, he pointed it at the agent's chest and "jabbed" him in the chest. Agent Stolley could not experience an electrical shock because of his bulletproof vest; however, Agent Stolley claimed he was not aware of that fact. He believed Foote desired to stun him. Agent Stolley also testified that he had observed Foote point the Taser at Deputy Swanson's face, but that the deputy was able to bat it away before it deployed.

[¶15.]    From our review, the jury could have concluded Foote attempted to use the Taser in a manner likely to inflict serious bodily harm upon the officers. Because the State's evidence and all favorable inferences drawn therefrom support a rational theory of guilt, we affirm Foote's convictions.

[¶16.]    Affirmed.

[¶17.]    GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER, Justices, concur.